**Melvin O'CARROLL, Plaintiff-Appellee,**

v.

**AMERICAN AIRLINES, INC., Defendant,**

**Chaparral Airlines, Inc., Defendant-Appellant.**

**No. 88–2560**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1989.

Order on Denial of Rehearing Feb. 9, 1989.

Mark A. Dombroff, Washington, D.C., Stuart J. Starry, Houston, Tex., for defendant-appellant.

March H. Coffield, Jasper, Tex., for plaintiff-appellee.

**12**

Before CLARK, Chief Judge, JOHNSON, and JOLLY, Circuit Judges.

PER CURIAM:

Defendant Chaparral Airlines appeals the district court's judgment on the jury verdict in favor of the plaintiff. Concluding that the district court lacked subject matter jurisdiction, we vacate.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Melvin O'Carroll (O'Carroll) held a valid flight ticket issued by Chaparral Airlines (Chaparral) for passage between Portland, Maine and Alexandria, Louisiana. The entire trip was to have taken several hours, and was comprised of three flight segments: Portland to Boston, Boston to Dallas (DFW) and DFW to Alexandria. Early in his journey, O'Carroll met a cousin, Robert Rollins (Rollins), and the two traveled together consuming a number of beers en route. Shortly after O'Carroll and Rollins boarded the Chaparral flight at DFW for the final leg of their journey, a commotion arose on the aircraft. Testimony at trial indicated that O'Carroll and Rollins asked a flight attendant for liquor immediately after boarding and were loud, boisterous and intoxicated. At one point, Rollins advised the pilot that he (Rollins) would "help him fly the plane." During the ensuing chain of events, Chaparral discovered an irregularity with O'Carroll's ticket. A flight attendant asked O'Carroll to deplane and check with the gate agent regarding the ticket mix-up; O'Carroll, however, uttering obscenities, refused to move. Ultimately, after being summoned by the Chaparral Captain, the police arrived and removed O'Carroll and Rollins from the aircraft. The two were thereafter charged with disorderly conduct and jailed.

O'Carroll brought the instant action in United States District Court asserting various state law claims because of what O'Carroll alleged to be his wrongful exclusion from the Chaparral flight. Jurisdiction of the district court was based entirely on diversity of citizenship. After a trial before a jury, a verdict was returned which awarded O'Carroll $260,273.23 in damages. The Magistrate denied Chaparral's subsequent Motion for Judgment Notwithstanding the Verdict and Chaparral's Rule 12(b)(6) Motion to Dismiss. Thereafter, the Magistrate entered judgment on the jury's verdict and Chaparral timely perfected this appeal.

## II. DISCUSSION

Chaparral argues that the state law claims which formed the basis of O'Carroll's action are preempted by federal law. We agree. There are three instances where federal law will be found to preempt state law. First, Congress may expressly preempt state law. *Shaw v. Delta Air Lines,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490, 500 (1983). Second, congressional intent to preempt may be inferred, generally from the pervasiveness of the federal regulatory scheme. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947). Third, when state law conflicts with federal law or interferes with the achievement of congressional objectives, preemption occurs even though state law may not be displaced in its entirety. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257 (1963); *Hines v. Davidowitz,* 312 U.S. 52, 67–68, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941). The existence of any of these circumstances is sufficient to establish preemption. *See Michigan Canners & Freezers Ass'n v. Agricultural Marketing & Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399, 406 (1984) (summarizing three types of preemption).

There can be no question that the Federal Aviation Act applies to the regulation of air travel. Section 1511 vests an air carrier with broad discretion with respect to whom will be granted or denied passage. Section 1511 reads in part:

> Subject to reasonable rules and regulations prescribed by the Secretary of Transportation, any such carrier may also refuse transportation of a passenger or property when, in the opinion of the carrier, such transportation would or might be inimical to safety of flight.

49 U.S.C.App. § 1511(a). The discretion conferred by the above section, while decidedly expansive, is not unfettered. Section 1374 provides that all air carriers must

> provide safe and adequate service, equipment, and facilities ... [and] establish, observe, and enforce just and reasonable ... rules, regulations and practices relat-

ing to [air travel].... No carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person ... or subject any particular person ... to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

49 U.S.C.App. §§ 1374(a)(1) & 1374(b). Further, an implied cause of action against an air carrier under section 1374 for abuse of the discretion accorded it by virtue of section 1511 has been recognized. *See Diefenthal v. C.A.B.*, 681 F.2d 1039, 1050 (5th Cir.1982); *see also Mason v. Belieu*, 543 F.2d 215 (D.C.Cir.1987) *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127.

While the pervasive breadth of the Act as discerned from the language quoted above would tend to indicate congressional preemptive intent, there is no need to rely upon inference alone as section 1305, which is entitled "Federal Preemption," expressly preempts state law and reads in pertinent part as follows:

[N]o State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C.App. § 1305(a)(1). In view of this explicit manifestation of congressional intent, we conclude that O'Carroll's common law claims are preempted by section 1305 and thus the district court lacked subject matter jurisdiction over the instant action. *See also Cippollone v. Liggett Group, Inc.*, 593 F.Supp. 1146 (D.C.N.J.1984), *rev'd on other grounds*, 789 F.2d 181. Consequently, we need not reach any other issues raised on appeal.

III. CONCLUSION

Because O'Carroll, in his complaint, alleged only state law based claims, and because we have determined that Congress intended through section 1305 to preempt state law based claims, we conclude that the district court lacked jurisdiction over the instant suit. The judgment of the district court is therefore vacated.

VACATED.

ORDER

On petition for rehearing, appellant Melvin O'Carroll contends that 49 U.S.C. § 1506 preserves his state law based negligence claims. Section 1506 reads as follows:

Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

49 U.S.C. § 1506. In making this contention, however, O'Carroll overlooks the fact that section 1305, entitled "Federal Preemption" was enacted by Congress well after section 1506. Therefore, we conclude that section 1305 is a clear indication of congressional intent to preempt and is controlling. The petition for rehearing is DENIED.