United States Court of Appeals,

Fifth Circuit.

No. 91-6037.

Frances S. HODGES, Plaintiff-Appellant,

v.

DELTA AIRLINES, INC., Defendant-Appellee.

Feb. 15, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, and PARKER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

During a flight from the Caribbean to Miami, Frances Hodges was injured when a fellow passenger opened an overhead compartment and dislodged a case containing several bottles of rum. The box fell and cut her arm and wrist. In her lawsuit against Delta Airlines, Hodges alleged that the airline's negligence caused her injury and medical expenses. The question before this court en banc is whether her state law tort claim for physical injury based on alleged negligent operation of the aircraft is preempted by § 1305(a)(1) of the Airline Deregulation Act of 1978 (ADA), 49 U.S.C.App. §§ 1301 *et seq.* 92 Stat. 1705 (codified at various sections of Title 49 U.S.C.App.). We hold that it is not and therefore overrule *Baugh v. Trans World Airlines, Inc.,* 915 F.2d 693 (5th Cir.1990), an originally unpublished opinion that, as circuit precedent, compelled the opposite result in the panel opinion herein.

1

The summary judgment awarded by the district court is reviewed *de novo* on appeal. *Hanson v. Continental Ins. Co.,* 940 F.2d 971, 975 (5th Cir.1991).

Section 1305(a)(1) provides in pertinent part:

> [N]o state ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes or services of any air carrier having authority under Title IV of this Act to provide air transportation.

49 U.S.C.App. § 1305(a)(1).

This provision originated in the ADA, an economic deregulation statute. The Federal Aviation Act of 1958 (FAA), 72 Stat. 731, 49 U.S.C.App. § 1301 *et seq.* (as amended), conferred on the Civil Aeronautics Board economic regulatory authority over interstate air transportation. The FAA did not expressly preempt state regulation of intrastate air transportation. In 1978, Congress amended the FAA after determining that efficiency, innovation, low prices, variety, and quality would be promoted by reliance on competitive market forces rather than pervasive federal regulation. Congress enacted the ADA to dismantle federal economic regulation. To prevent the states from frustrating the goals of deregulation by establishing or maintaining economic regulations of their own, Congress enacted § 1305(a)(1), which preempts the states from enforcing any law "relating to rates, routes or services" of any carrier. *Morales v. Trans World Airlines, Inc.,* --- U.S. ----, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

The question in this case is the breadth of that express

preemption of state law.[1]  Interpretation of the statutory language is the key to construing its preemptive force.  *Morales, --- U.S. at ----,* 112 S.Ct. at 2037.

The Supreme Court has twice broached the subject of § 1305(a)(1) preemption in a way that informs but does not squarely resolve this case.  In the first decision the question was whether § 1305(a)(1), in providing that no state may enforce any law "relating to rates", overcame the attempts of several state attorneys general to apply state deceptive advertising laws against the airlines.  *Morales* held that it did.  *Morales* drew upon the broad construction of the phrase "relating to" in the ERISA cases.[2]  Thus, the phrase "relating to" means "to stand in some relation;  to have bearing or concern;  to pertain;  refer;  to bring to association with or connection with."  *Morales, --- U.S. at ----,* 112 S.Ct. at 2037 (quoting *Black's Law Dictionary* 1158 (5th

[1]State law is displaced by federal law where (1) Congress expressly preempts state law;  (2) Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme;  or (3) state law conflicts with federal law or interferes with the achievement of federal objectives. *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d (1985); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983);  *see also Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947);  *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

[2]*See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (a state law relates to an employee benefit plan and is preempted "if it has a connection with or reference to such a plan").  This language is "expansive," *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552-53, 95 L.Ed.2d 39 (1987), and "broadly worded," *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 137-40, 111 S.Ct. 478, 482-83, 112 L.Ed.2d 474 (1990).

Ed.1979)). Consequently, "[s]tate enforcement actions having a connection with or reference to airline "rates, routes or services' are preempted" under § 1305(a)(1). *Id.*

As a necessary consequence of its broad interpretation, the Court rejected the argument that § 1305(a)(1) preempts the states only from actually prescribing rates, routes, or services. --- U.S. at ----, 112 S.Ct. at 2037-38. The Court also rejected the notions that "only state laws specifically addressed to the airline industry are preempted" and that "preemption is inappropriate when state and federal law are consistent." *Morales,* --- U.S. at ----, 112 S.Ct. at 2038. Laws of general applicability, even those consistent with federal law, are preempted if they have the "forbidden significant effect" on rates, routes or services. --- U.S. at ----, 112 S.Ct. at 2039.

The Court acknowledged, however, that "[s]ome state actions may affect [airline services] in too tenuous, remote or peripheral a manner" to be preempted. *Morales,* --- U.S. at ----, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). Refusing to state exactly where the line would be drawn in a close case, the Court observed that the facts before it presented no close question of the connection between the attempted regulation and air fares.

*Morales* commands that whatever state laws "relate to rates, routes or services" are broadly preempted, but it does not define "services." The panel opinion in this case concluded that:

> "Services" generally represent a bargained-for or anticipated
> provision of labor from one party to another. If the element

4

of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Hodges v. Delta Airlines, Inc.,* 4 F.3d 350, 354 (5th Cir.1993). The court adheres to this definition of services *en banc,* a definition inferentially reinforced by the Court's decision in *American Airlines, Inc. v. Wolens,* --- U.S. ----, ----, --- S.Ct. ----, ----, --- L.Ed.2d ----, 63 U.S.L.W. 4066, 4069 (Jan. 18, 1995) (describing claims concerning American Airlines' frequent flyer program as related to rates and "services," *i.e.,* access to flights and class-of-service upgrades ..."). Thus, federal preemption of state laws, even certain common law actions "related to services" of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft. This definition harmonizes § 1305(a)(1) with other sections of airline regulatory law, with Congressional intent underlying the ADA, with the regulatory agencies' understanding of the statute, and with general principles of federal preemption.

Under the regulatory framework established by the FAA, the term "service" or "services" had an established definition,

5

consistent with dictionary usage.[3]  A vestige of that definition

remains in what is left of the federal airline regulatory statutes:

> "All-cargo air *service*" means the carriage by aircraft in interstate or overseas air transportation of only property or mail, or both.

49 U.S.C.App. § 1301(11) ("Definitions" section).  "Air service"

referred at the time of passage of the ADA to the point-to-point

transportation of passengers, cargo or mail, and it encompassed the

business of transportation as well as the schedules and type of

contract (common carriage or charter).  This court interpreted

"service" to embody the airlines' quality of service in such a

fashion as to authorize federal regulation of smoking on commercial

flights.  *Diefenthal v. C.A.B.,* 681 F.2d 1039 (5th Cir.1982), *cert.*

*denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983).[4]

Following deregulation, the CAB's statements implementing the

ADA strongly support the view that the ADA was concerned solely

with economic deregulation, not with displacing state tort law.

---

[3]Webster's Third New International Dictionary (1976) includes some of the following definitions:

> An action or use that furthers some purpose;  supply of needs [*e.g.,* a vending machine for the *service* of passersby];  railroads and telephone companies produce *services*—useful labor that does not produce a good; provision for conducting a public utility [*e.g.,* air freight *service* ];  regularly scheduled trip on public transportation ( [free air *services*] ).

[4]Hodges asserts that *Diefenthal* supports the position that notwithstanding § 1305(a)(1), *no* state tort suit is preempted. *Diefenthal* held that two passengers' lawsuit complaining that they were forced to ride in the "smoking section" of the aircraft was not within federal jurisdiction based on an insufficient amount in controversy.  The court did not decide and was not presented with any issue of federal preemption, however, so *Diefenthal* is inapposite to construing § 1305(a)(1).

The Board concluded that:

> preemption extends to all of the economic factors that go into the provision of the *quid pro quo* for passenger's [sic] fare, including flight frequency and timing, liability limits, reservation and boarding practices, insurance, smoking rules, meal service, entertainment, [and] bonding and corporate financing.[5]

The Federal Aviation Agency, to which some of the Civil Aeronautics Board's powers were transferred by the ADA, *see* 49 U.S.C.App. § 1551(b), continues to identify "service" or "services" in its regulations to incorporate the accoutrements of the passenger- or shipper- and carrier contract.[6]

A facile analogy to *Morales* and the ERISA pre-emption cases could suggest that "services" includes all aspects of the air

---

[5]44 Fed.Reg. 9948, 9951 (Feb. 15, 1979). The CAB also opined:

> [A] state may not interfere with the services that carriers offer in exchange for their rates and fares. For example, liquidated damages for bumping (denial of boarding), segregation of smoking passengers, minimum liability for loss, damages and delayed baggage, and ancillary charges for headsets, alcoholic beverages, entertainment, and excess baggage would clearly be "service" regulation within the meaning of section 105.

*Id.*

[6]Specific references to the words "service" or "services" in the Code of Federal Regulations governing airlines are too numerous to incorporate here. Some examples include (all within 14 C.F.R.): 14 C.F.R. § 201.1 (domestic all-cargo air *service* ); § 201.4(d) (the type of *service*—passengers, property or mail to be rendered and whether such *services* are to be rendered on scheduled or charter operations); § 204.3(t) (a description of the *service* to be operated if an application is granted); § 207.1 (defining special "*services*"); § 207.13(b) (terms of *service* for charter trips); § 207.71(a) (terms of *service* for charter trips include those for ground accommodations and *services* ); § 217.4(b) (listing classes of *service* including scheduled passengers/cargo; scheduled all-cargo, ... non-scheduled *services* ...) (emphasis added).

7

carrier's "utility" to its customers, hence, any state tort claim may "relate to" services as a result of its indirect regulatory impact on the airline's practices. Taken to its logical extreme, this argument would suggest that a lawsuit following a fatal airplane crash could relate to "services".

That Congress did not, however, intend § 1305(a)(1) to preempt all state claims for personal injury is evident from at least one other provision of the remaining airline regulatory statutes. Air carriers are required to maintain insurance or self-insurance as prescribed by the Federal Aviation Administration that covers "amounts for which ... air carriers may become liable for bodily injuries to or the death of any person, or for loss of or damage to property of others, resulting from the operation or maintenance of aircraft ..." 49 U.S.C.App. § 1371(q) (1994); *see also,* 14 C.F.R. § 205.5(a) (1992) (insurance regs.).[7] The importance of § 1371(q) cannot be understated, for it can only be understood to qualify the scope of "services" removed from state regulation by § 1305(a)(1). A complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory.

---

[7]Further, § 1506 of the FAA provides that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.App. § 1506. Before enactment of the ADA, this section permitted limited economic regulation of intrastate flights and enabled the states to enforce their general laws against the airlines. The Supreme Court accounted this provision of marginal significance in *Morales,* describing it as a general "saving clause" that cannot supersede the specific preemption provision. --- U.S. at ----, 112 S.Ct. at 2037.

The FAA further defines "operation of aircraft" as "the use of aircraft for the purpose of air navigation ... includ[ing] the navigation of aircraft."  49 U.S.C.App. § 1301(31) (1988).  One uses the overhead luggage racks or the food and beverages provided in aircraft operation just as one uses the cigarette lighter or built-in cooler compartment in an automobile, and all these devices are available to support the general purpose of navigation.

Significantly, too, neither the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption.[8] *See American Airlines v. Wolens,* --- U.S. at ---- n. 7, --- S.Ct. at ---- n. 7, 63 U.S.L.W. at 4070 n. 7 (American Airlines and United States, as *amicus curiae,* agree it is unlikely that safety-related personal injury claims arising from airplane operations are preempted.)  "This silence takes on added significance in light of Congress's failure to provide any federal remedy for persons injured by such conduct.  It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."[9]  The Supreme Court has repeatedly cautioned that federal courts should

---

[8]Compare the ADA with ERISA legislation, in which Congress provided several federal causes of action to replace the preempted state causes.  *See Pilot Life,* 481 U.S. at 43-44, 107 S.Ct. at 1551.

[9]*Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623 (citing *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 663-64, 74 S.Ct. 833, 836-38, 98 L.Ed. 1025 (1954)).

not displace state police powers by federal law unless that was the "clear and manifest purpose of Congress." *California v. ARC America Corp.,* 490 U.S. 93, 102, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).[10]

Delta Airlines agrees that among the "services" deregulated under the ADA and covered by its preemption clause are the economic or contractual features of air transportation. Delta argues, however, that Mrs. Hodges' accident arose out of the "services" of baggage handling and boarding, not out of the "operation and maintenance of aircraft" covered by § 1371(q). The "services" that the state may not regulate under § 1305(a)(1) are distinct from the "operation and maintenance of aircraft", and all claims related to "services" are preempted.[11]

This argument fails on two levels. First, if the statutory provisions created a strict dichotomy between services and operation or maintenance of aircraft, Hodges' injury more properly is laid at the door of operations. Whether certain luggage may be placed in overhead bins and whether the flight attendants properly monitor compliance with overhead rack regulations are matters that

[10]The Seventh Circuit noted that "[s]tate courts award damages every day in air crash cases, notwithstanding that federal law preempts the regulation of safety in air travel," confidently adding that "[t]he Federal Aviation Act does not expressly preempt state damages remedies." *Bieneman v. City of Chicago,* 864 F.2d 463, 471 (7th Cir.1988).

[11]Delta has thus refined its position again. Only a few years ago, it defended an injury case very similar to this one without hinting at a federal preemption defense. *Schwamb v. Delta Airlines, Inc.,* 516 So.2d 452 (La.Ct.App.1987).

pertain to the safe operation of a flight. "Baggage handling" and "boarding", as referred to in the above-quoted CAB statement, concern the airline's policy for permitting baggage to be carried or passengers to be permitted to board. These are aspects of the "service" offered; they do not refer directly to the way in which the aircraft is operated.[12]

Second, as this example shows, the provinces of "services" and "operation and maintenance of aircraft" overlap somewhat conceptually; no strict dichotomy exists. There is not, however, a fundamental inconsistency between the two provisions. By means of § 1305(a)(1), Congress intended to prevent the states from regressing on economic deregulation by applying their own laws or rules concerning "services," but in § 1371(q), Congress explicitly preserved airlines' duty to respond to tort actions, inferentially state law actions, for physical injury or property damage.

Finally, unlike the NAAG Guidelines in *Morales,* enforcement of tort remedies for personal physical injury ordinarily has no

---

[12]Delta confuses its argument by contending that this state tort suit should not be permitted to proceed because it could impose duties that conflict with Federal Aviation Administration regulations governing carry-on baggage. There are no facts in the record that intimate the basis for such a conflict. Moreover, in *Cipollone v. Liggett Group, Inc.,* --- U.S. ----, ----, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (plurality opinion); *id.* at ----, 112 S.Ct. at 2625 (Blackmun, J., concurring), the Supreme Court held that when Congress has enacted an explicit preemption provision, courts should not usually imply broader preemption of state law. *See Cipollone,* --- U.S. ----, 112 S.Ct. at 2618 (plurality opinion); *id.* at ----, 112 S.Ct. at 2625 (Blackmun, J., concurring). Therefore, this decision of our court does not address the possible preemptive effect of Federal Aviation Administration safety regulations governing aircraft and carriers. *See Public Health Trust of Dade Cty., Fla. v. Luke Aircraft, Inc.,* 992 F.2d 291 (11th Cir.1993).

11

"express reference" to services as defined above. *See Morales,* ---
U.S. at ----, 112 S.Ct. at 2039. Enforcement of such tort duties
normally will not have "the forbidden significant effect" on
airlines' services. *Id. Morales* relied in part on the fact that
the state restrictions on airfare advertising had a significant
economic effect on fares. Generally, however, state tort laws
concerning the operation and maintenance of aircraft can be
enforced consistently with and distinctly from the services that
Congress deregulated. Most cases will not pose as close a question
as this one.

But this general vindication of state tort claims arising from
the maintenance or operation of aircraft *does not* extend to all
conceivable state tort claims. Two examples of the continued scope
of preemption are illustrative. In *O'Carroll v. American Airlines,
Inc.,* 863 F.2d 11 (5th Cir.), *cert. denied,* 490 U.S. 1106, 109
S.Ct. 3158, 104 L.Ed.2d 1021 (1989), the plaintiff and his cousin
were removed from a commercial airline flight because they were
loud, boisterous, and intoxicated. 863 F.2d at 12. O'Carroll
sued, alleging that he was wrongfully evicted from the flight.
This court vacated O'Carroll's sizeable jury verdict, holding that
his state law claims were preempted by § 1305(a)(1). *O'Carroll* did
not discuss the scope of § 1305(a)(1) because the state law claims
arising from the alleged wrongful exclusion undeniably related only
to the services provided by the airline. No claim was made that
the airline breached any safety-related tort duty by bumping
O'Carroll. Enforcement of O'Carroll's state law claims would

12

result in significant *de facto* regulation of the airlines' boarding practices and, moreover, would interfere with federal law granting the airlines substantial discretion to refuse to carry passengers. 49 U.S.C.App. § 1511(a).

Similarly, the claims asserted by the plaintiff in *West v. Northwest Airlines,* 995 F.2d 148 (9th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994), would be preempted under our interpretation of "services". Plaintiff West sued because he was "bumped" from the overbooked airline flight for which he had reserved a seat. After remand for reconsideration in light of *Morales,* the Ninth Circuit held, over a dissent, that West's state law claims were too tenuously connected to "rates, routes and services" to be preempted by § 1305(a)(1). The majority did find West's punitive damage claim preempted. Under either *Morales* or the analysis advanced here, it is difficult to see how a lawsuit for overbooking would not "relate to" the airline's contract for "services" with its passenger.[13]

### Hodges' Claims

Hodges alleged that Delta was negligent in allowing the case of rum to be stowed in an overhead storage bin. This tort claim for personal injury has no specific "reference to" airline services, *see Morales,* --- U.S. at ----, 112 S.Ct. at 2039, although it does derive from the operation of the aircraft. Nor

---

[13]We reiterate our rejection of Hodges' fallback position that even if federal law completely displaced her state law claim, an implied private right of action may be inferred from FAA § 1374(a). *Diefenthal v. CAB, supra.*

13

would enforcement of her claim significantly affect Delta's services, as defined above.  As other cases have recently held, this type of claim does not relate to Delta's services and is not preempted by § 1305(a)(1).  *See, e.g., Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.,* 992 F.2d 291 (11th Cir.1993); *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318 (E.D.Mich.1993); *but see Williams v. Express Airlines I, Inc.,* 825 F.Supp. 831 (W.D.Tenn.1993).

The judgment of the district court is *REVERSED,* and the case is *REMANDED* for further proceedings.

E. GRADY JOLLY, specially concurring:

I concur in the judgment in this case and its companion, *Smith v. America West,* --- F.3d ----.  I cannot approve, however, of the rationale used to decide these cases.  The majority and the dissent agree on the principle that a claim is preempted by the ADA express preemption provision[1] if the claim relates to services that are not a part of the maintenance or operation of an airline;  only the application of this rule prompts the dissent.  The fact that the

---

[1] 49 U.S.C. § 41713.  A week before this case was argued to the en banc court, Public Law 103-272, which purports to "revise, codify and enact without substantive change" parts of title 49 of the United States Code, became effective.  As a part of that codification, the preemption provision at issue here was redesignated and slightly rewritten.  The former provision, 49 U.S.C.App. § 1305, captioned "Federal preemption," provided that, with exceptions not relevant here,

> no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ...

14

majority and the dissent disagree only on the application of this principle reveals that it promises uncertainty and inconsistent results.

I would have preferred that we give effect to the plain language of the ADA preemption provision. Plainly, it preempts only claims "relating to a price, route, or service" that involve an instance of a "state ... enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law."[2] In my view, while these claims are unquestionably related to a service, they simply do not run afoul of the provision's prohibition of state-adopted legislation or regulation, or state enforcement of legislation or regulation. In short, they are not instances of a state "imposing [its] own substantive standards with respect to rates routes, or services," which the ADA preemption provision plainly preempts. *American Airlines v. Wolens,* 1995 WL 15047, *8, --- U.S. ----, ----, --- S.Ct. ----, ----, --- L.Ed.2d ----. Instead, these suits involve efforts by private individuals to obtain relief afforded by the common law tort rules of the state.

According to well-settled principles of statutory construction, we must not read § 41713 "so as to render another

---

[2]In footnote 5, the *American Airlines* Court quoted with approval the statement that the word series "law, rule, regulation, standard, or other provision having the force and effect of law" in the predecessor to § 41713 connotes "official government-imposed policies ... that operate irrespective of any private agreement." *Id.* at *6, --- U.S. at ----, --- S.Ct. at ----. The tort system is not "government-imposed": liability under the common law for negligence does not depend upon any expression of a legislative or executive agency of any state.

[provision] superfluous." *See, e.g., Forsyth v. Barr,* 19 F.3d 1527 (5th Cir.1994). In this case, we must read the preemption provision and the general savings clause[3] of the Federal Aviation Act together "unless there is a "positive repugnancy' between the two." *MCorp Financial v. Board of Governors,* 900 F.2d 852, 856 (5th Cir.1990). Indeed, the *American Airlines* Court relied upon the general savings clause in its determination that claims by private individuals to obtain remedies for an asserted breach of contract as falling outside the sweep of the preemption provision. I would hold, similarly, that claims by private individuals to obtain remedies for an asserted breach of the duty of reasonable care—traditional, well-settled common law tort remedies, in short—are not preempted by the ADA preemption provision either. *Compare* the preemption provisions in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Cipollone v. Liggett Group, Inc.,* --- U.S. ----, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); and *Norfolk & Western R. Co. v. American Train Dispatchers,* 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991).[4]

---

[3]49 U.S.C.App. § 1506 provided: "Nothing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Chapter are in addition to such remedies." As modified and codified (but, again, without substantive change), the analogous provision is found at 49 U.S.C. § 40120(c): "A remedy under this part is in addition to any other remedies provided by law."

[4]In *Pilot Life Insurance Co. v. Dedeaux,* the Court held that ERISA preempted certain common law tort claims. ERISA expressly "supersedes any and all state laws" and defines "states laws" as "all laws, *decisions,* rules, regulations, or other state action having the effect of law." 29 U.S.C. § 1144. The preemption

provision at issue here, on the other hand, only prohibits the "enact[ment] or enforce[ment]" of a "law, regulation, or other provision having the effect of law." Conspicuously absent from the ADA preemption provision is the word "decisions" or any reference to decisional law. The majority's interpretation effectively reads "decisions" into the preemption provision. In addition to the language of ERISA's preemption statutes, the *Pilot Life* Court relied on ERISA's "comprehensive civil enforcement scheme" to give broad effect to the preemption provision. The *American Airlines* Court points out that "[T]he ADA contains no hint of such a role for the federal courts. In this regard, the ADA contrasts markedly with ERISA, which does channel civil actions into federal courts under a comprehensive scheme, detailed in legislation."

Construing the reference to "law" in the ADA preemption statute as excluding the common law of a state is consistent with the Court's construction of the terms "state law" and "all other law" in the preemption statutes at issue in *Cipollone v. Liggett Group, Inc.,* --- U.S. ----, ----, 112 S.Ct. 2608, 2620-21, 120 L.Ed.2d 407 (1992), and *Norfolk & Western R. Co. v. American Train Dispatchers,* --- U.S. ----, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), respectively, both of which are cited in *American Airlines.* In *Cipollone,* the preemption provision, by its own terms, preempted "requirement[s] or prohibitions ... imposed under state law." The Court determined first that the term "requirement or prohibition" is broad enough to encompass common law claims; in the cases before us today, however, the ADA statute preempts only "enact[ments] or enforce[ment]," which plainly refer to legislative and executive acts. More significantly, the *Cipollone* Court found that the phrase "state law," standing alone, was broad enough to encompass common law claims in that particular statute. Even in the newly-minted version of the ADA, however, the term "law" does not stand alone. Instead, the ADA preemption provision refers to "law[s], regulation[s], or other provision[s]," and its predecessor referred to "law[s], regulations, standards, or other provisions."

In *Norfolk & Western R. Co.,* the preemption statute exempts railroads from the antitrust laws and "all other law, including state and municipal law." Giving full effect to the general term "all other law," the Court held that it preempted obligations arising under a collective bargaining agreement because it preempted the underlying contract law that made the obligation binding. The ADA preemption statute plainly does not preempt "all other law." Instead, it preempts merely "law [legislation], regulation, and any other provision having the force and effect of law." It

17

This plain language approach does not open the door to all tort suits.  The other provisions of the Federal Aviation Act and regulations issued thereunder likely will impliedly and sometimes specifically preempt certain claims that arise under the common law of a state.[5]  In the light of that fact, I view the majority's ascribing a broader sweep to the preemption provision than its language will admit, and then engrafting upon its own broad interpretation a series of narrowing distinctions that lack a basis in the words of the statute and are not susceptible of clear meaning or certain application.  I would prefer, instead of erecting these tenuous and uncertain judge-made distinctions, to

does not preempt decisional law, which is the source of the obligations that arise when a passenger is injured.

The well-settled principle that we must give effect to each word of a statute compels the conclusion that by specifically referring in the ADA preemption statute to enacting laws, regulations, and other provisions, and enforcing laws, regulations, and other provisions, Congress limited the operation of the ADA preemption statute to preempt only legislative and executive actions and enactments.  Thus, there are thoroughly convincing reasons that distinguish the conclusions reached in *Cipollone* and *Norfolk & Western R. Co.* from the conclusion we should reach today concerning the meaning of the term "law" in the ADA's preemption provision.

[5]*O'Carroll,* as explained in the footnote 7, illustrates implied preemption through inconsistency with the Federal Aviation Act.  Furthermore, although the issue is not before us and we do not decide it today, another example of a common law claim against an airline that might be impliedly preempted is a suit alleging breach of contract for "bumping" a duly-ticketed passenger from a scheduled flight.  This claim is likely preempted by the extensive regulations contained at 14 C.F.R. § 250.

18

rely upon the plain language of the provision as Congress intended[6] and enacted it and our other, well-settled, federal preemption principles. This plain language approach leads to the same result as the majority, but without wrestling with the questions whether the suits fall on a particular side of arbitrary and artificial lines drawn in shifting sand.[7]

---

[6]The House Report accompanying the enactment of 49 U.S.C.App. § 1305 states that the lack of a clear delineation of state and federal jurisdiction over airlines had created "uncertainties and conflicts, including situations in which carriers have been required to charge different fares for passengers traveling between two cities, depending on whether these passengers were interstate passengers whose fares are regulated by the CAB, or intrastate passengers, whose fare is regulated by a state." 1978 U.S.C.C. & A.N. 3751-52. To that end, § 1305 would "prevent conflicts and inconsistent regulations by providing that when a carrier operates under authority granted pursuant to ... the Federal Aviation Act, no state may regulate that carrier's routes, rates or services. * * * The bill also eliminates Federal jurisdiction over certain service which is essentially intrastate in nature." *Id.*

Similarly, the House Conference Report explains that § 1305 "prohibits a state from enacting any law, establishing any standard determining routes, schedules, or rates, fares, or charges in tariffs of, or otherwise promulgating economic regulations for, any air carrier certified by the Board." *Id.* at 3804. Nowhere, however, does Congress evidence an intent to relieve air carriers of their obligation to exercise reasonable care for the safety of their passengers.

[7]A consideration of two cases referred to by the majority reveals the difficulties created by its departure from the plain language of the preemption provision. The majority today overrules *Baugh v. Trans World Airlines,* 915 F.2d 693 (5th Cir.1990), and reaffirms *O'Carroll v. American Airlines,* 863 F.2d 11 (5th Cir.), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), but as far as I understand the majority's approach, it seems to compel an overruling of *O'Carroll* and a reaffirmance of *Baugh.* These cases bear out my expectation that confusion and uncertainty will ensue from the approach outlined in the majority's opinions.

In *Baugh,* a flight attendant stomped on a passenger's

19

foot while engaged in some unspecified activity.  We held
that the passenger's claim was preempted because it related
to the services afforded to the passengers on an airline.
In *Hodges,* the majority specifically includes "provision of
food and drink" in its open-ended definition of services
that are preempted.  As far as the majority knows, the
flight attendant in *Baugh* was engaged in the provision of
food and drink when the injury occurred, which means that
one would assume under the majority's opinion that the cause
of action in Baugh remains preempted.  Why, then, does the
majority assume that *Baugh* must be reversed?

     *Baugh* relied upon *O'Carroll.*  Although both this case
and *Smith* reaffirm *O'Carroll,* I am convinced that under the
majority's approach, *O'Carroll* would be overruled.  In that
case, the majority explains, we held that state claims
stemming from an assertedly wrongful exclusion from an
airplane were preempted.  The majority states today that
O'Carroll's claims are preempted by the express preemption
provision because they "undeniably relate to services."
Under *Smith,* however, the majority's explanation is not
sufficient because the probability exists that, although the
claim did relate to services, it implicated safety concerns,
and thus would fall outside the preemption provision.  *Smith*
answers, in an oblique way, that O'Carroll's claims
implicated economic practices as opposed to the safety of
the flight.  That answer, however, belies the fact that
O'Carroll and his companion were excluded from the flight,
and later jailed for disorderly conduct, because they were
intoxicated and had been behaving so boisterously that at
one point one of them offered his assistance to the pilot in
flying the plane.  *Id.* at 12.  O'Carroll's claims plainly
implicated the safety of the flight.  As a consequence,
O'Carroll's suit should not be preempted under the approach
announced by the majority today.

     The result in *O'Carroll* can be reconciled with the
plain language approach suggested by this concurring
opinion.  In *O'Carroll,* we determined that the claims were
preempted for two reasons.  First, 49 U.S.C.App. § 1511(a)
granted broad discretion to refuse to transport any
passenger if it "would or might be inimicable to safety of
flight."  863 F.2d at 11-12.  Clearly, transporting Carroll
in his condition threatened the safety of the flight.
O'Carroll's claims thus were impliedly preempted by the
separate federal statute.  A wholly convincing reason
independent of the express preemption provision thus
justified our determination that O'Carroll's claim was
preempted.  Seen in this light, our conclusory statement in
O'Carroll that "[T]here is no need to rely upon inference

20

PATRICK E. HIGGINBOTHAM, Circuit Judge, with whom EMILIO M. GARZA, Circuit Judge, joins, dissenting:

Congress has given the courts a difficult interpretation task, but I cannot agree with the test adopted by my colleagues. We must decide whether this tort suit questions the operation or maintenance of the aircraft. It cannot be maintained under state law unless it does.

Section 1305(a)(1) provides, in part, that "no State ... shall enact or enforce any law ... relating to rates, routes or services of any air carrier...." 49 U.S.C.App. § 1305(a)(1). The statute does not identify what "relating to ... services" means, nor does it define the term "services." In *Morales v. Trans World Airlines, Inc.,* --- U.S. ----, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court interpreted the words of § 1305(a)(1) according to their ordinary meanings and found that "relating to" means a "connection with or reference to." *Id.* at ----, 112 S.Ct. at 2037 (internal quotation marks omitted). Applying the ordinary-meaning approach, service is "useful labor that does not produce a tangible commodity." Webster's Third New International Dictionary 2075 (1961).

While the term services must be given its ordinary meaning, it is clear that Congress did not intend operation or maintenance of an aircraft to fall within the statute's definition of services,

---

alone as section 1305 ... expressly preempts state law," and that "[i]n view of this explicit manifestation of congressional intent, we conclude that O'Carroll's common law claims are preempted under § 1305," *id.* at 13, is properly regarded as *obiter dicta.*

despite its common sense relationship to provision of services. Section 1371(q)(1) requires each air carrier to maintain insurance to cover "amounts for which ... such air carrier may become liable for bodily injuries to or the death of any person, or for loss of or damage to property of others, *resulting from the operation or maintenance of aircraft.*" 49 U.S.C.App. § 1374(q)(1) (emphasis added). We cannot read § 1305(a)(1)'s use of the term services to include operation or maintenance of an aircraft and give meaning to § 1371(q)(1).

The first inquiry is whether the claim, with regulatory effect, relates to "rates, routes or services." 49 U.S.C.App. § 1305(a)(1). If the claim relates to services, then it is preempted unless it also results from "the operation or maintenance of aircraft." *Id.* § 1371(q)(1). If there is doubt as to whether the claim results from the operation or maintenance of the aircraft, that doubt is to be resolved in favor of the operation or maintenance category. *See Cipollone v. Liggett Group, Inc.,* --- U.S. ----, ----, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (applying "presumption against the preemption of state police powers"). Thus, preemption turns on whether judicial enforcement of a claim would regulate and whether the regulation was of the operation or maintenance of an aircraft.

Reflecting upon the practical reach of a tort claim offers light to both inquiries. A minerun tort case from Louisiana makes the point. In *Schwamb v. Delta Air Lines, Inc.,* 516 So.2d 452 (La.Ct.App.1987), *writ denied,* 520 So.2d 750 (La.1988), Schwamb was

22

injured when a briefcase fell out of an overhead bin and struck him on the head. Schwamb introduced the testimony of Miller, an expert in aeronautical engineering, aviation accident investigation and reconstruction, human factors, crash survivability, safety engineering, and safety management. Miller testified that the following steps could have been taken to minimize a passenger's risk of being struck by objects falling from overhead bins:

> (1) A pre-boarding announcement to passengers about how to load the baggage; e.g. "Put the heavy things on the bottom, the lighter things on top." (2) A pre-boarding announcement to passengers to stow their baggage but not to close the doors. If the doors were open, flight attendants could come down the aisle before takeoff and check each and every one of the bins without having to take the time to open closed bins. (3) A pre-boarding inspection of carry-on baggage, in which flight attendants check the volume of the luggage as well as its weight. (4) An on-board announcement by the flight attendant to passengers, e.g., in conjunction with the safety briefing concerning oxygen masks and emergency exits. (5) A warning on the plastic safety card which says something such as: "Be careful; don't overload bins and use caution when you use them." (6) A warning or illustration depicting the proper way to pack an overhead bin. (7) A pre-landing announcement to passengers concerning the removal of baggage from the overhead bins. (8) An announcement or warning while taxiing to the arrival gate when the vast majority of passengers are still seated, to the effect that passengers need to be cautious when opening the bins.

*Id.* at 463. The placement of baggage in an overhead compartment plainly relates to airline services. State enforcement of the claim plainly regulates.

Hodges' claim is then preempted unless the activity she complains of constitutes operation or maintenance of an aircraft. "Operation of aircraft" means "the use of aircraft, for the purpose of air navigation and includes the navigation of aircraft." 49 U.S.C.App. § 1301(31). The statute does not define "maintenance of

23

aircraft." Nonetheless, I have little difficulty in concluding that stowing carry-on items in an overhead compartment is a service airlines provide for passengers who do not wish to check their baggage. It does not in any way relate to the navigation or maintenance of aircraft. Hodges' claim is preempted, and the judgment of the district court should be affirmed.