E. GRADY JOLLY,
specially concurring:
I concur in the judgment in this case and its companion, Smith v. America West Airlines, 44 F.3d 344 (5th Cir.). I cannot approve, however, of the rationale used to decide these cases. The majority and the dissent agree on the principle that a claim is preempted by the ADA express preemption provision[1] if the claim relates to services that are not a part of the maintenance or operation of an airline; only the application of this rule prompts the dissent. The fact that the majority and the dissent disagree only on the application of this principle reveals that it promises uncertainty, and inconsistent results.
I would have preferred that we give effect to the plain language of the ADA preemption provision. Plainly, it preempts only claims “related to a price, route, or service” that involve an instance of a “state ... enact[ing] or enforcing] a law, regulation, or other provision having the force and effect of law.” In my view, while these claims are unquestionably related to a service, they simply do not run afoul of the provision’s prohibition of state-adopted legislation or regulation, or state enforcement of legislation or regulation. In short, they are not instances of a state “imposing [its] own substantive standards with respect to rates routes, or services,” which the ADA preemption provision plainly preempts. American Airlines v. Wolens, -U.S.-,-, 115 S.Ct. 817, 826, 130 L.Ed.2d 715 (1995). Instead, these suits involve efforts by private individuals to obtain *341 relief afforded by the common law tort rules of the state.[2]
According to well-settled principles of statutory construction, we must not read the ADA preemption provision “so as to render another [provision] superfluous.” Forsyth v. Barr, 19 F.3d 1527, 1543 (5th Cir.1994). In this ease, we must read the preemption provision and the general savings clause[3] of the Federal Aviation Act together “unless there is a ‘positive repugnancy’ between the two.” MCorp Financial v. Board of Governors, 900 F.2d 852, 856 (5th Cir.1990). Indeed, the American Airlines Court relied upon the general savings clause in its determination that claims by private individuals to obtain remedies for an asserted breach of contract as falling outside the sweep of the preemption provision. I would hold, similarly, that claims by private individuals to obtain remedies for an asserted breach of the duty of reasonable care — traditional, well-settled common law tort remedies, in short — are not preempted by the ADA preemption provision either. Compare the preemption provisions in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); Cipollone v. Liggett Group, Inc., — U.S. -, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); and Norfolk & Western R. Co. v. American Train Dispatchers, 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991).[4]
*342 This plain language approach does not open the door to all tort suits. The other provisions of the Federal Aviation Act and regulations issued thereunder likely will impliedly and sometimes specifically preempt certain claims that arise under the common law of a state.[5] In the light of that fact, I view as a mistake the majority’s ascribing a broader sweep to the preemption provision than its language will admit, and then en-grafting upon its own broad interpretation a ■series of narrowing distinctions that lack a basis in the words of the statute and are not susceptible of clear meaning or certain application. I would prefer, instead of erecting these tenuous and uncertain judge-made distinctions, to rely upon the plain language of the provision as Congress intended[6] and enacted it and our other, well-settled, federal preemption principles.. This plain language approach leads to the same result as the majority, but without wrestling with the questions whether the suits fall on a particular side of arbitrary and artificial lines drawn in shifting sand.[7]
*343 PATRICK E. HIGGINBOTHAM, Circuit Judge, with whom EMILIO M. GARZA, Circuit Judge, joins, dissenting:
Congress has given the courts a difficult interpretation task, but I cannot agree with the test adopted by my colleagues. We must decide whether this tort suit questions the operation or maintenance of the aircraft. It cannot be maintained under state law unless it does.
Section 1305(a)(1) provides, in part, that “no State ... shall enact or enforce any law ... relating to rates, routes or services of any air carrier.” 49 U.S.CApp. § 1305(a)(1). The statute does not identify what “relating to ... services” means, nor does it define the term “services.” In Morales v. Trans World Airlines, Inc., — U.S.-, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court interpreted the words of § 1305(a)(1) according to their ordinary meanings and found that “relating to” means a “connection with or reference to.” Id. at-, 112 S.Ct. at 2037 (internal quotation marks omitted). Applying the ordinary-meaning approach, service is “useful labor that does not produce a tangible commodity.” Webster’s Third New International Dictionary 2075 (1961).
While the term services must be given its ordinary meaning, it is clear that Congress did not intend operation or maintenance of an aircraft to fall within the statute’s definition of services, despite its common sense relationship to provision of services. Section 1371(q)(l) requires each air earner to maintain insurance to cover “amounts for which ... such air carrier may become hable for bodily injuries to or the death of any person, or for loss of or damage to property of others, resulting from the operation or maintenance of aircraft.” 49 U.S.C.App. § 1374(q)(l) (emphasis added). We cannot read § 1305(a)(l)’s use of the term services to include operation or maintenance of an aircraft and give meaning to § 1371(q)(l).
The first inquiry is whether the claim, with regulatory effect, relates to “rates, routes or services.” 49 U.S.C.App. § 1305(a)(1). If the claim relates to services, then it is preempted unless it also results from “the operation or maintenance of aircraft.” Id. § 1371(q)(l). If there is doubt as to whether the claim results from the operation or maintenance of the aircraft, that doubt is to be resolved in favor of the operation or maintenance category. See Cipollone v. Liggett Group, Inc., — U.S.-,-, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (applying “presumption against the preemption of state police powers”). Thus, preemption turns on whether judicial enforcement of a claim would regulate and whether the regulation was of the operation or maintenance of an aircraft.
Reflecting upon the practical reach of a tort claim sheds light on both inquiries. A minerun tort case from Louisiana makes the point. In Schwamb v. Delta Air Lines, Inc., 516 So.2d 452 (La.Ct.App.1987), writ denied, 520 So.2d 750 (La.1988), Schwamb was injured when a briefcase fell out of an overhead bin and struck him on the head. Schwamb introduced the testimony of Miller, an expert in aeronautical engineering, aviation accident investigation and reconstruction, human factors, crash survivability, safety engineering, and safety management. Miller testified that the following steps could *344 have been taken to minimize a passenger’s risk of being struck by objects falling from overhead bins:
(1) A pre-boarding announcement to passengers about how to load the baggage; e.g. “Put the heavy things on the bottom, the lighter things on top.” (2) A pre-boarding announcement to passengers to stow their baggage but not to close the doors. If the doors were open, flight attendants could come down the aisle before takeoff and cheek each and every one of the bins without having to take the time to open closed bins. (3) A pre-boarding inspection of carry-on baggage, in which flight attendants check the volume of the luggage as well as its weight. (4) An on-board announcement by the flight attendant to passengers, e.g., in conjunction with the safety briefing concerning oxygen masks and émergency exits. (5) A warning on the plastic safety card which says something such as: “Be careful; don’t overload bins and use caution when you use them.” (6) A warning or illustration depicting the proper way to pack an overhead bin. (7) A pre-landing announcement to passengers concerning the removal of baggage from the overhead bins. (8) An announcement or warning while taxiing to the arrival gate when the vast majority of passengers are still seated, to the effect that passengers need to be cautious when opening the bins.
Id. at 463. The placement of baggage in an overhead compartment plainly relates to airline services. State enforcement of the claim plainly regulates.
Hodges’ claim is then preempted unless the activity she complains of constitutes operation or maintenance of an aircraft. “Operation of aircraft” means “the use of aircraft, for the purpose of air navigation and includes the navigation of aircraft.” 49 U.S.CApp. § 1301(31). The statute does not define “maintenance of aircraft.” Nonetheless, I have little difficulty in concluding that stowing carry-on items in an overhead compartment is a service airlines provide for passengers who do not wish to check their baggage. It does not in any way relate to the navigation or maintenance of aircraft. Hodges’ claim is preempted, and the judgment of the district court should be affirmed.

. A week before this case was argued to the en banc court, Public Law 103-272, which purports to "revise, codify and enact without substantive change” parts of title 49 of the United States Code, became effective. As a part of that codification, the preemption provision at issue here was redesignated and slightly rewritten. It is now codified at 49 U.S.C. § 41713B and provides:
A state, political subdivision of a state, or political authority of at least 2 states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier ... The former provision, 49 U.S.C.App. § 1305,
captioned "Federal preemption,” provided that, with exceptions not relevant here,
no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier

. In footnote 5, the American Airlines Court quoted with approval the statement that the word series “law, rule, regulation, standard, or other provision having the force and effect of law” in the predecessor to § 41713 connotes “official government-imposed policies ... that operate irrespective of any private agreement." Id., — U.S. at-, 115 S.Ct. at 824. The tort system is not "government-imposed”: liability under the common law for negligence does not depend upon any expression of a legislative or executive agency of any state.

. 49 U.S.C.App. § 1506 provided: "Nothing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Chapter are in addition to such remedies.” As modified ánd codified (but, again, without substantive change), the analogous provision is found at 49 U.S.C. § 40120(c): "A remedy under this part is in addition to any other remedies provided by law."

. In Pilot Life Insurance Co. v. Dedeaux, the Court held that ERISA preempted certain common law tort claims. ERISA expressly "supersedes any and all state laws” and defines “states laws” as "all laws, decisions, rules, regulations, or other state action having the effect of law.” 29 U.S.C. § 1144. The preemption provision at issue here, on the other hand, only prohibits the "enact[ment] or enforce[ment]” of a "law, regulation, or other provision having the effect of law.” Conspicuously absent from the ADA preemption provision is the word "decisions” or any reference to decisional law. The majority's interpretation effectively reads "decisions” into the preemption provision. In addition to the language of ERISA's preemption statutes, the Pilot Life Court relied on ERISA's "comprehensive civil enforcement scheme" to give broad effect to the preemption provision. The American Airlines Court points out that “[T]he ADA contains no hint of such a role for the federal courts. In this regard, the ADA contrasts markedly with ERISA, which does channel civil actions into federal courts under a comprehensive scheme, detailed in legislation.”
Construing the reference to "law” in the ADA preemption statute as excluding the common law of a state is consistent with the Court's construction of the terms “state law” and “all other law” in the preemption statutes at issue in Cipollone v. Liggett Group, Inc.,-U.S. --, --, 112 S.Ct. 2608, 2620-21, 120 L.Ed.2d 407 (1992), and Norfolk & Western R. Co. v. American Train Dispatchers, 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), respectively, both of which are cited in American Airlines. In Cipollone, the preemption provision, by its own terms, preempted “requirements] or prohibitions ... imposed under state law.” The Court determined first that the term "requirement or prohibition” is broad enough to encompass common law claims; in the cases before us today, however, the ADA statute preempts only "enactments] or enforce[ment],” which plainly refer to legislative and executive acts. More significantly, the Cipollone Court found that the phrase “state law,” standing alone, was broad enough to encompass common law claims in that particular statute. Even in the newly-minted version of the ADA, however, the term "law” does not stand alone. Instead, the ADA preemption provision refers to "law[s], regulation[s], or other provision[s],” and its predecessor referred to "law[s], regulations, standards, or other provisions.”
In Norfolk & Western R. Co., the preemption statute exempts railroads from the antitrust laws and "all other law, including state and municipal law.” Giving full effect to the general term "all other law,” the Court held that it preempted obligations arising under a collective bargaining agreement because it preempted the underlying contract law that made the obligation binding. The ADA preemption statute plainly does not preempt "all other law.” Instead, it preempts merely "law [legislation], regulation, and any other provision having the force and effect of law.” It does not preempt decisional law, which is the source of the obligations that arise when a passenger is injured.
*342 The well-settled principle that we must give effect to each word of a statute compels the conclusion that by specifically referring in the ADA preemption statute to enacting laws, regulations, and other provisions, and enforcing laws, regulations, and other provisions, Congress limited the operation of the ADA preemption statute to preempt only legislative and executive actions and enactments. Thus, there are thoroughly convincing reasons that distinguish the conclusions reached in Cipollone and Norfolk & Western R. Co. from the conclusion we should reach today concerning the meaning of the term "law” in the ADA’s preemption provision.

. O'Carroll, as explained in footnote 7, illustrates implied preemption through inconsistency with the Federal Aviation Act. Furthermore, although the issue is not before us and we do not decide it today, another example of a common law claim against an airline that might be impliedly preempted is a suit alleging breach of contract for "bumping” a duly-ticketed passenger from a scheduled flight. This claim is likely preempted by the extensive regulations contained at 14 C.F.R. § 250 (1994).

. The House Report accompanying the enactment of 49 U.S.C.App. § 1305 states that the lack of a clear delineation of state and federal jurisdiction over airlines had created "uncertainties and conflicts, including situations in which carriers have been required to charge different fares for passengers traveling between two cities, depending on whether these passengers were interstate passengers whose fares are regulated by the CAB, or intrastate passengers, whose fare is regulated by a state.” 1978 U.S.C.C. & A.N. 3751-52. To that end, § 1305 would "prevent conflicts and inconsistent regulations by providing that when a carrier operates under authority granted pursuant to ... the Federal Aviation Act, no state may regulate that carrier's routes, rates or services. * * * The bill also eliminates Federal jurisdiction over certain service which is essentially intrastate in nature.” Id.
Similarly, the House Conference Report explains that § 1305 "prohibits a state from enacting any law, establishing any standard determining routes, schedules, or rates, fares, or charges in tariffs of, or otherwise promulgating economic regulations for, any air carrier certified by the Board.” Id. at 3804. Nowhere, however, does Congress evidence an intent to relieve air carriers of their obligation to exercise reasonable care for the safety of their passengers.

.A consideration of two cases referred to by the majority reveals the difficulties created by its departure from the plain language of the preemption provision. The majority today overrules Baugh v. Trans World Airlines, 915 F.2d 693 (5th Cir.1990), and reaffirms O'Carroll v. American Airlines, 863 F.2d 11 (5th Cir.), cert. denied, 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), but as far as I understand the majority’s approach, it seems to compel an overruling of O’Carroll and a reaffirmance of Baugh. These cases bear out my expectation that confusion and uncertainty will ensue from the approach outlined in the majority's opinions.
In Baugh, a flight attendant stomped on a passenger's foot while engaged in some unspecified activity. We held that the passenger's claim was preempted because it related to the services afforded to the passengers on an airline. In Hodges, the majority specifically includes "provision of food and drink” in its open-ended definition of services that are preempted. As far as the majority knows, the flight attendant in Baugh was engaged in the provision of food and drink when the injury occurred, which means that one would assume under the majority's opinion that the cause of action in Baugh remains preempted. Why, then, does the majority assume that Baugh must be reversed?
Baugh relied upon O’Carroll. Although both this case and Smith reaffirm O'Carroll, I am convinced that under the majority’s approach, O’Carroll would be overruled. In that case, the majority explains, we held that state claims stemming from an assertedly wrongful exclusion from an airplane were preempted. The majority states today that O'Carroll's claims are preempted by the express -preemption provision because they “undeniably relate to services.” Under Smith, however, the majority's explanation is not sufficient because the probability exists that, although the claim did relate to services, it implicated safety concerns, and thus would fall outside the preemption provision. Smith answers, in an oblique way, that O’Carroll’s claims implicated economic practices as opposed to the safety of the flight. That answer, however, belies the fact that *343 O’Carroll and his companion were excluded from the flight, and later jailed for disorderly conduct, because they were intoxicated and had been behaving so boisterously that at one point one of them offered his assistance to the pilot in flying the plane. Id. at 12. O'Carroll’s claims plainly implicated the safety of the flight. As a consequence, O’Carroll’s suit should not be preempted under the approach announced by the majority today.
The result in O'Carroll can be reconciled with the plain language approach suggested by this concurring opinion. In O'Carroll, we. determined that the claims were preempted for two reasons. First, 49 U.S.C.App. § 1511(a) granted broad discretion to refuse to transport any passenger if it "would or might be inimicable to safety of flight.” 863 F.2d at 11-12. Clearly, transporting Carroll in his condition threatened the safety of the flight. O’Cairoll’s claims thus were impliedly preempted by the separate federal statute. A wholly convincing reason independent of the express preemption provision thus justified our determination that O'Carroll's claim was preempted. Seen in this light, our concluso-ry statement in O'Carroll that "[T]here is no need to rely upon inference alone as section 1305 ... expressly preempts state law,” and that “[i]n view of this explicit manifestation of congressional intent, we conclude that O’Carroll’s common law claims are preempted under § 1305,” id. at 13, is properly regarded as obiter dictum.