HARRISON CONFERENCE SERVICES OF MASSACHUSETTS, INC.
*vs.* COMMISSIONER OF REVENUE.

Suffolk.  December 3, 1984. — February 7, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Taxation,* Meals tax. *Agency,* What constitutes.

In a proceeding before the Appellate Tax Board for abatement of meals tax, substantial evidence supported the board's determination that no taxable event occurred when the taxpayer, while acting as an agent of a company in operating the dining facilities at the company's employee training center, served meals which it prepared from food owned by the company to the company's employees at no charge. [23-24]

APPEAL from a decision of the Appellate Tax Board.

*Jamie W. Katz,* Assistant Attorney General, for the Commissioner of Revenue.

*Philip Burling (David J. Seipp* with him) for the plaintiff.

*John E. Coyne & Deborah A. Marshall,* for Massachusetts Restaurant Association, amicus curiae, submitted a brief.

O'CONNOR, J. The Commissioner of Revenue (Commissioner) appeals from a decision of the Appellate Tax Board (board) abating $70,059.01 of meals and sales tax assessed by the Commissioner on meals served by Harrison Conference Services of Massachusetts, Inc. (Harrison), from June, 1975, through June, 1978. We affirm the board's decision.

In February, 1979, the Commissioner notified Harrison of the assessment in issue. Harrison applied for abatements. When, without Harrison's consent, the Commissioner failed to act on those applications within six months, they were deemed denied, see G. L. c. 58A, § 6, and Harrison appealed to the board. The board made the following findings that are supported by substantial evidence and are, therefore, final. *Donlon* v. *Assessors of Holliston,* 389 Mass. 848, 851 n.3 (1983).

During the relevant taxable years, New England Telephone and Telegraph Company (New England) maintained a training center and conference facility in Marlborough called the New England Learning Center (center). The center had offices, classrooms, and conference rooms, as well as lodging, recreation, and dining facilities. New England engaged Harrison to operate the center's lodging and dining facilities. New England employees participating in training sessions ate meals served at the center. New England provided those meals without charge, and New England's personnel department budgeted the cost of those meals as a training expense. New England employees participating in business conferences also ate at the center without charge, and their departments reimbursed the personnel department for their meals by interdepartmental invoices. Harrison did not collect meals or sales tax for meals that it served to the trainees and conferees.

Under the contracts between New England and Harrison, Harrison operated the facilities entirely with funds advanced by New England and deposited by Harrison in a special bank account from which Harrison paid all operating expenses. New England advanced the funds in accordance with a budget approved by New England at the beginning of each year and revised prior to each succeeding quarter. The budget encompassed all of Harrison's anticipated expenditures for the ensuing year, including expenditures for food. New England exercised general supervision over Harrison's activities, reviewing and approving any changes in menus, portions of food, equipment, security, costs, or other aspects of Harrison's operation of the facilities. The only compensation that New England paid Harrison was a "flat-fee" for services. If, in operating the center, Harrison spent less money than that advanced, then the excess reverted to New England. If, on the other hand, expenses exceeded the budget, then New England advanced more money.

The board found that "the contract[s] between the telephone company and Harrison and their course of dealings demonstrate that Harrison's duties are subject to the telephone company's approval and control," and that the contracts and course of

dealings "manifested the telephone company's intent to have Harrison act for it as agent in the operation of the learning center and Harrison's willingness to so act." In its "opinion," the board stated that "[t]he meals tax does not apply to meals furnished at no charge to . . . employees if the meals are provided by employees . . . or agents of the [employer]." Therefore, the board held that, because New England, "in acting through its agent Harrison, is acting for itself there is no sale of meals and the meals tax does not apply."

We set forth the applicable statutory provisions. From June, 1975, to January 1, 1978, G. L. c. 64B governed the taxation of meals served in the Commonwealth. General Laws c. 64B, § 2, as amended through St. 1971, c. 901, § 1, provided: "An excise is hereby imposed at the rate of five per cent upon taxable charges . . . . Each taxpayer shall collect from the purchaser the full amount of the excise imposed . . . ." General Laws c. 64B, § 1, as amended through St. 1975, c. 684, § 56, defined "[t]axable charge" as "any amount charged for meals wherever furnished within the commonwealth," and defined "[t]axpayer" as "any person making a taxable charge." Section 1 also defined "[m]eal" as "any food or beverage, or both, prepared for human consumption and provided by a restaurant," and "[r]estaurant" as "any eating establishment where food . . . [is] provided and for which a charge is made . . . ." Effective January 1, 1978, the Legislature repealed G. L. c. 64B and incorporated its provisions into G. L. c. 64H. St. 1977, c. 363A, §§ 43, 46.[1]

---

[1] General Laws c. 64H, § 2, as amended by St. 1976, c. 415, § 74, provides: "An excise is hereby imposed upon sales at retail of tangible personal property in the commonwealth by any vendor at the rate of five per cent of the gross receipts of the vendor from all such sales of such property . . . . The excise shall be paid by the vendor to the commissioner . . . ." General Laws c. 64H, § 6, as appearing in St. 1977, c. 363A, § 46, provides: "The following sales and the gross receipts therefrom shall be exempt from the tax imposed by this chapter: — . . . (*h*) Sales of food products for human consumption. . . . 'Food products' does not include meals . . . . 'Meals' shall mean any food or beverage, or both, prepared for human consumption and provided by a restaurant . . . . 'Restaurant', shall mean any eating establishment where food . . . [is] provided and for which a charge is made . . . ."

The Legislature has provided for taxation of only those meals for which a charge is made. One who gets paid merely to serve a meal incurs no tax liability. Under G. L. c. 64H, or under former c. 64B, unless a meal is *sold*, no taxable event has occurred. As the Commissioner writes in his brief, "[i]n essence, the issue is whether Harrison 'sold' meals to New England." The board's findings demonstrate that Harrison did not sell meals to New England.

The board properly found that Harrison acted as New England's agent when Harrison operated the center. The relationship of principal and agent arises "from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1(1) (1958). See *Choate* v. *Assessors of Boston*, 304 Mass. 298, 300 (1939). In acting as New England's agent, Harrison purchased food in bulk to prepare and serve at the center. Harrison purchased that food on New England's behalf; the food belonged to New England. New England paid Harrison to prepare New England's food and to serve that food to New England employees. Because New England, and not Harrison, owned the food, Harrison could not sell it to New England. Without selling food, Harrison could not sell meals. Therefore, no taxable event occurred when Harrison served meals to New England's employees.

We make a final note. Although we agree with the board's conclusion, we think the statement that "[t]he meals tax does not apply to meals furnished at no charge to . . . employees if the meals are provided by employees . . . or agents of [the employer]" is too broad. If an employer's agent *sells* meals, then G. L. c. 64H applies. The statute focuses on the *sale* of meals. The status of the parties as principal and agent may, as in this case, establish that no sale has taken place. However, if a party, acting as agent for another, prepares its own food and serves it in the form of meals to the principal's employees, for a charge paid by the principal for the food as well as the service, then a taxable event occurs.

*Decision of the Appellate Tax*
*Board affirmed.*