**Ana Magalis DIAZ AGUASVIVA,**
**Plaintiff,**

v.

**IBERIA LINEAS AEREAS de ESPANA**
**and Insurance Co. X, Y, Z,**
**Defendants.**

Civ. No. 93–2795 (HL).

United States District Court,
D. Puerto Rico.

Sept. 27, 1995.

John E. Mudd, Ortiz Toro & Ortiz Brunet, Howard Charles, San Juan, PR, for plaintiff.

Juan R. Marchand–Quintero, Rivera Cestero & Marchand Quintero, San Juan, PR, for Iberia Lineas Aereas de Espana.

### OPINION AND ORDER

LAFFITTE, District Judge.

Defendant, Iberia Lineas Aereas de Espana ("Iberia"), moved for (1) dismissal of the Plaintiff's complaint on the grounds that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a) (1995) and (2) summary judgment on the grounds that Iberia's passenger ticket and tariffs filed with the Department of Transportation absolve Iberia of all liability. (Dkt. Nos. 6, 11, 16.) Plaintiff, Ana Magalis Diaz Aguasviva ("Diaz"), opposed Iberia's motion. (Dkt. Nos. 9, 12, 15.)

The Court hereby **denies** Iberia's motion to dismiss the complaint because there is subject matter jurisdiction over this case under 28 U.S.C. § 1330 (1995). Pursuant to section 1330, the Court hereby **strikes** the Plaintiff's request for a jury trial. In addition, the Court hereby **grants** Iberia's motion for summary judgment on the Plaintiff's contractual claim but **denies** Iberia's motion for summary judgment on the Plaintiff's claim of negligence within the meaning of § 1802 of Puerto Rico's Civil Code. *See* P.R. Laws Ann. tit. 31, § 5141 (1991).

### I. BACKGROUND [1]

Diaz is a citizen of the Dominican Republic and permanent resident of Puerto Rico. On

1. For the purposes of this summary judgment motion, this Court states the facts in the light

July 8, 1993, Diaz and a group of parishioners from her Church departed from San Juan, Puerto Rico on the Defendant's airline, Iberia Lineas Aereas de Espana. Iberia is a corporation organized and existing under the laws of the Republic of Spain and majority owned by a political subdivision of Spain, the Instituto Nacional de Industria.

Diaz' first stop was Madrid, Spain where she stayed for two days. Thereafter, on July 10, 1993, she boarded a new Iberian airline bound for her final destination, Israel. Before reaching her destination, however, Diaz endured several unfortunate experiences that form the basis of this lawsuit.

On the way to Israel, Iberia made a stop in Istanbul, Turkey. When the Turkish authorities discovered that Diaz did not have the necessary visa to enter the country, Turkish immigration officials arrested her and imprisoned her in a temporary holding area. Separated for one hour from her companions, Diaz feared for her safety. Without a visa, Turkish authorities forced Diaz to return to Spain aboard one of Iberia's air carriers.

During her return flight to Barcelona, Spain, Iberia's employees reported Diaz as an illegal alien to the immigration officials. Upon her arrival in Barcelona, a uniformed police officer boarded the airplane asking about the illegal alien. An Iberian employee identified Diaz as the alien. Subsequently, the officer forced Diaz to leave the airplane. The officer held Diaz in a temporary holding area before forcing her to return to her seat on the same airplane now bound for Madrid, Spain. During this ordeal, the employees of Iberia did not assist Diaz or answer any of her questions.

In Madrid, uniformed police officers again boarded the airplane and asked where the illegal alien was sitting. Once again, Iberia's employees identified Diaz. Immediately thereafter, the officers forced Diaz to leave the airplane and pushed Diaz to move along faster while the other passengers watched. Finally, at one o'clock in the morning, the officers released her.

As a result of this traumatic experience, on December 30, 1993, Diaz filed a complaint against Iberia airlines. Diaz alleged that Iberia violated a contractual obligation when it did not inform her that she needed a visa to enter Turkey. In addition, Diaz claimed that Iberia's employees were negligent within the meaning of § 1802 of the Civil Code of Puerto Rico. *See* P.R. Laws Ann. tit. 31, § 5141 (1991). Diaz stated that the Court had subject matter jurisdiction over these claims based on diversity jurisdiction.

## II. DISCUSSION

### A. IBERIA'S MOTION TO DISMISS

Iberia moved to dismiss Diaz' complaint on the grounds that the Court lacked subject matter jurisdiction under 28 U.S.C. § 1332(a) (1995). As a result, both Iberia and Diaz presented arguments over the constitutionality of a permanent resident such as Diaz suing a non-resident alien like Iberia in federal court. It is unnecessary to reach this constitutional question because the parties overlooked this Court's subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330 (1995).

■ Section 1330(a) states: "The district courts shall have original jurisdiction without regard to amount in controversy of any non-jury civil action against a foreign state." 28 U.S.C. § 1330(a) (1995). In *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989), the Supreme Court declared that section 1330 is the exclusive source of a federal court's jurisdiction over a "foreign state." Since Iberia is a "foreign state" within the meaning of 28 U.S.C. § 1330 (1995) and 28 U.S.C. § 1603 (1995), section 1330 is the sole means by which this Court has jurisdiction over Iberia. *See Iberia, Lineas Aereas de Espana, S.A. v. Secretario de Hacienda*, 94 J.T.S. 8 (1994); *Tote v. Iberia Int'l Airlines*, 649 F.Supp. 41 (E.D.Pa.1986); *Greene Air Int'l, Inc. v. Iberia Airlines of Spain, Inc.*, No. 91 C 348, 1991 WL 70900, 1991 U.S.Dist. LEXIS 5601 (E.D.Ill. April 26, 1991).

■ As a general rule, under the FSIA, "foreign states" are presumptively immune

most favorable to the Plaintiff and indulges all inferences in the Plaintiff's favor.

from the jurisdiction of this Court. *Saudi Arabia v. Nelson*, 507 U.S. 349, ——, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993). However, Diaz can sue Iberia in this Court under one of the exceptions to this rule of immunity. *See* 28 U.S.C. § 1605 (1995). Under section 1605(a)(2), actions that are "based upon a commercial activity carried on in the United States by the foreign state" are not immune from suit. *Id.* In other words, Iberia is immune when it acts as a sovereign entity but is subject to suit when it acts as a commercial entity. *See Santos v. Compagnie Nationale Air France*, 934 F.2d 890, 893 (7th Cir.1991). Clearly, Iberia was acting as a commercial entity when it flew Diaz from San Juan, Puerto Rico to Israel while making stops in Madrid, Spain and Istanbul, Turkey. Consequently, Iberia is not immune from Diaz' suit and this Court has subject matter jurisdiction to hear her claims.

■ Finally, pursuant to the FSIA, the Court hereby **strikes** the Plaintiff's demand for a jury trial. The Seventh Amendment does not guarantee the Plaintiff a jury trial because suits against "foreign states" were nonexistent at common law. Consequently, it is well-settled that section 1330 does not allow jury trials against "foreign states." *See Universal Consol. Cos., Inc. v. Bank of China*, 35 F.3d 243 (6th Cir.1994); *Ruggiero v. Compania Peruana De Vapores "Inca Capac Yupanqui"*, 639 F.2d 872 (2d Cir.1981); *Burke v. Compagnie Nationale Air France*, 699 F.Supp. 1016 (D.P.R.1988).

## B. IBERIA'S MOTION FOR SUMMARY JUDGMENT

### I. STANDARD

■ Failing to dismiss the complaint, Iberia moved alternatively for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party

must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e).

■ The nonmoving party cannot rest upon mere conclusory allegations, improbable inferences and unsupported speculation. *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). Moreover, the nonmoving party cannot rest on the pleadings but should set forward specific facts showing that there are genuine triable issues. *Id.* Supporting and opposing affidavits shall be based upon personal knowledge and set forth facts that would be admissible into evidence at trial. Fed.R.Civ.P. 56(e). All material facts set forth in the movant's statement of uncontested facts will be deemed to be admitted unless controverted by the nonmovant in a separate, short, concise statement of material facts at issue. Local Rule 311.12. *See also, Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930 (1st Cir.1983).

■ A fact is material, if under applicable substantive law, it may affect the result of the case. *Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 73 (1st Cir.1990). A dispute is genuine only if there is conflicting evidence that requires a trial to resolve the discrepancy. *Id.* In determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir.1989); *John & Kostas Serv. Station, Inc. v. Cumberland Farms, Inc.*, 948 F.2d 821, 822 (1st Cir.1991).

### II. APPLICATION

Plaintiff has two distinct claims against Iberia airlines: (1) a contractual claim stemming from Iberia's failure to notify Diaz about a visa to enter Turkey; and (2) a claim under § 1802 of the Puerto Rico Civil Code including but not limited to allegations of defamation, false imprisonment, false arrest, assault, and negligence. *See* P.R.Laws Ann. tit. 31, § 5141 (1991).

Before gleaning the record for genuine issues of material fact, the Court must first

determine whether the Airline Deregulation Act of 1978 ("ADA") preempts any or all of the Plaintiff's claims. *See* 49 U.S.C. § 41713(b)(1) (1995).[2] Congress passed the ADA with the intention of deregulating the airline industry. The preemption clause prevents states, territories, and possessions of the United States from obstructing this goal. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 377, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992).

The preemption clause states: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a *price, route,* or *service* of an air carrier...." 49 U.S.C. § 41713(b)(1) (1995) (emphasis added). Interpreting the sweeping language of this provision, the Supreme Court held that the clause preempts all state enforcement actions connected with the rates, routes, and services of an air carrier. *Morales,* 504 U.S. at 383, 112 S.Ct. at 2037. The ADA even preempts local laws of general applicability which do not target the airline industry. *Id.,* 504 U.S. at 386, 112 S.Ct. at 2038.

Accordingly, the *Morales* Court found that the National Association of Attorneys General regulations governing airline advertising, "frequent flyer" programs, and overbooked flights "related to" airline "rates." *Id.,* 504 U.S. at 387, 112 S.Ct. at 2039. These regulations provided a clear cut case of state interference with the airline industry. The rules would have had a significant impact on airline fares. *Id.* The Supreme Court left open, however, whether the ADA preempts local laws which have a far more " 'tenuous, remote, or peripheral' " connection with airline rates, routes, and services. *Id.,* 504 U.S. at 389, 112 S.Ct. at 2040.

Recently, in *American Airlines, Inc. v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court revisited the issue of ADA preemption. American Airlines limited the value of frequent flyer credits retroactively. Consequently, participants in the American Airlines fre-

quent flyer program filed suit against the air carrier for consumer fraud and breach of contract. The Supreme Court held that the ADA preempted the state law claim of consumer fraud because it policed the marketing practices of American Airlines. *Id.,* 115 S.Ct. at 823. However, the Supreme Court ruled that the ADA did not preempt the breach of contract claim. That claim involves the enforcement of a private agreement between the air carrier and the passenger, not a local law or state regulation. *Id.,* 115 S.Ct. at 824–27.

█ The conclusions of the *Wolens* Court leaves no doubt that the Plaintiff's contractual claim is not preempted. Applying the reasoning of *Wolens,* this Court finds that Diaz is attempting to enforce a private agreement between an airline and a passenger. Whether the ADA preempts Diaz' second claim under § 1802 of the Puerto Rico Civil Code is not so clear. The question is whether local tort claims of defamation, false imprisonment, false arrest, assault, and negligence in the context of this case relate to airline "services" within the meaning of section 41713(b)(1).

Courts faced with similar facts following *Morales* are split on this issue. The majority have held that tort claims have a tenuous, remote, and peripheral connection to airline "services." *See Smith v. America West Airlines, Inc.,* 44 F.3d 344 (5th Cir.1995) (passenger's negligence action arising out of airline inadequate safety measures not preempted); *Sedigh v. Delta Airlines, Inc.,* 850 F.Supp. 197 (E.D.N.Y.1994) (passenger's claims of, *inter alia,* unlawful imprisonment, assault, slander, and breach of contract arising out of airline reporting passenger to German authorities for suspected criminal activity not preempted); *Curley v. American Airlines, Inc.,* 846 F.Supp. 280 (S.D.N.Y.1994) (passenger's claims of false imprisonment and negligence arising out of airline reporting suspected marijuana use to Mexican authorities not preempted); *Fenn v. American Airlines, Inc.,* 839 F.Supp. 1218 (S.D.Miss.

---

**2.** This is a revision of a similar preemption clause codified previously as 49 U.S.C. § 1305(a)(1) (1976). Congress did not intend to make any substantive changes with this revision.

*See American Airlines v. Wolens,* —— U.S. ——, —— n. 1, 115 S.Ct. 817, 821 n. 1, 130 L.Ed.2d 715 (1995).

1993) (passenger's claims of false imprisonment and slander arising out of accusation of theft not preempted); *Margolis v. United Airlines, Inc.*, 811 F.Supp. 318 (E.D.Mich. 1993) (passenger negligence action arising out of injury from fallen luggage not preempted); *Heller v. Delta Air Lines, Inc.*, No. 92 CIV 1937, 1993 WL 330093, 1993 U.S.Dist. LEXIS 11854 (S.D.N.Y. Aug. 24, 1993) (same); *Doricent v. American Airlines, Inc.*, No. 91–12084Y, 1993 WL 437670, 1993 U.S.Dist. LEXIS 15143 (D.Mass. Oct. 19, 1993) (passenger's claims of, *inter alia*, assault and battery arising out of airline personnel removing plaintiff from airplane because he was black not preempted); *Salley v. Trans World Airlines, Inc.*, 723 F.Supp. 1164 (E.D.La.1989) (state law claims arising out of airline refusal to transport plaintiff not preempted).

A minority of courts, however, have reached the opposite conclusion. *See Williams v. Express Airlines I, Inc.*, 825 F.Supp. 831 (W.D.Tenn.1993) (passenger's claim of false imprisonment arising out of airline strapping handicapped passenger into immobile seat preempted); *Lawal v. British Airways, PLC*, 812 F.Supp. 713 (S.D.Tex. 1992) (passenger's claims of false arrest, false imprisonment, and assault and battery claims arising out of airline security actions preempted); *Cannava v. USAir, Inc.*, No. 91–30003–F, 1993 WL 565341, 1993 U.S.Dist. LEXIS 16726 (D.Mass. Jan. 7, 1993) (passenger's claims of, *inter alia*, false imprisonment and defamation arising out of mistreatment by airline personnel preempted).

■ Finding the reasoning of the majority persuasive, the Court adopts the holding of these opinions. The tortious conduct of an airline is not a regular or typical "service" provided by the airline industry. An airline responsible for the false arrest, the false imprisonment, or the defamed reputation of a passenger is not providing an airline "service." The definition of "services" supports this view. Services are "[t]hings purchased by consumers that do not have physical characteristics." Black's Law Dictionary 1369 (6th ed. 1990). No one would seriously dispute that passengers such as the Plaintiff do not intend to purchase an airline's tortious conduct.

Moreover, allowing the Plaintiff to proceed with her tort claims will not obstruct the purposes of the preemption clause. Congress preempted all state regulations related to rates, routes, and services "encouraging, developing, and maintaining an air transportation system relying on actual and potential competition—(A) to provide efficiency, innovation, and low prices; and (B) to decide on the variety and quality of, and determine prices for, air transportation services." 49 U.S.C. § 40101(a)(12) (1995). The Plaintiff's tort claims will not impede the free market competition of air carriers. Claims of false imprisonment, defamation, false arrest, assault, or negligence "would hardly cause an airline to alter its competitive strategy in the slightest degree." *Sedigh*, 850 F.Supp. at 200.

Based on the holdings of *Morales* and *Wolens*, therefore, the Court finds that the ADA has not preempted the Plaintiff's claims. Having resolved the preemption issue, the Court turns now to Iberia's arguments in its motion for summary judgment. Iberia asserts that its tariffs on file with the Department of Transportation ("DOT") and the passenger ticket's "Conditions of Contract" absolve it of all liability for the Plaintiff's claims arising out of the incidents in Istanbul, Turkey, Barcelona, and Madrid, Spain.

■ Iberia emphasizes correctly that the tariffs on file with the DOT "represent the conclusive and exclusive rights and liabilities between an airline and its passengers." *Trans World Airlines v. American Coupon Exch., Inc.*, 682 F.Supp. 1476, 1481 (C.D.Cal. 1988) (citing *United States v. Edwards*, 602 F.2d 458, 462 (1st Cir.1979)). The tariffs are a binding contract between the parties "even if the passenger did not actually know of them." *Fontan-de-Maldonado v. Lineas Aereas Costarricenses, S.A.*, 936 F.2d 630 (1st Cir.1991). Moreover, "it is the tariff . . ., not the ticket, that constitutes the contract." *Id.* at 632.

■ Iberia's tariffs holds it free of liability for the passenger's failure to comply with

the travel requirements or laws of other countries. Specifically, the tariff states:

> The passenger shall comply with all laws, regulations orders, demands or travel requirements of the countries to be flown from, into or over.... Carrier shall not be liable for any aid or information given by any agent or employee of Carrier in connection with obtaining necessary documents ... or for the consequences to any passenger resulting from his failure to obtain such documents....

Airline Tariff Rule 45(A). Under the tariff, even if Iberia's employees told the Plaintiff that she did not need a visa to enter Turkey, Iberia would not be held liable for the consequences.

In response, the Plaintiff never argues that the tariff is against public policy. *Cf. Fontan-de-Maldonado*, 936 F.2d at 631 (passenger challenges tariff relieving airline of liability for misinforming plaintiff about need for passport). Instead, the Plaintiff alleges that another tariff provision, Rule 45(B), holds Iberia liable for failing to inform her about the necessary visa.

The Plaintiff, however, misreads tariff Rule 45(B). Rule 45(B)(1) states:

> The passenger must present all exit, entry and other documents required by ... the countries concerned. Carrier will refuse carriage to any passenger who has not complied with applicable laws ... or whose documents are not complete. Carrier is not liable to the passenger for loss or expense due to the passenger's failure to comply with this provision.

The Plaintiff argues that this tariff requires Iberia to refuse to transport a passenger who does not have the necessary travel visas or passports. According to the Plaintiff, by not preventing her from boarding the airplane, Iberia is liable for the consequences.

The Plaintiff's interpretation of Rule 45(B) does not reflect the plain meaning of the words when Rule 45(B) is read together with Rule 45(A). Clearly, under Rule 45(A), the Plaintiff failed to acquire a visa and, therefore, failed to comply with the laws of Turkey. Furthermore, the rule states that Iberia is not liable for any misinformation given by its employees to the Plaintiff. Most importantly, the rule states that Iberia is not liable for the consequences for the Plaintiff's failure to acquire the visa. Under the Plaintiff's interpretation of Rule 45(B), Rule 45(A) would be rendered meaningless.

Even assuming that Iberia violated its duty to refuse to board all passengers without the correct travel requirements, Rule 45(A) would still hold Iberia harmless for any damages. Moreover, the Plaintiff ignores the significance of the last phrase in Rule 45(B). Similar to the wording in Rule 45(A), this phrase once again states that Iberia is not liable for the Plaintiff's failure to acquire the necessary travel documents.

Accordingly, there is no genuine issue of material fact in dispute regarding the Plaintiff's contractual claim. The words of the tariff speak for themselves. Defendant's motion for summary judgment on the Plaintiff's contractual claim is hereby **granted.** Judgment shall be entered accordingly. In contrast, however, the Court finds that there are genuine issues of material fact in dispute regarding the Plaintiff's claims under § 1802 of the Puerto Rico Civil Code.

In its motion for summary judgment, Iberia assumes that the tariff provisions relieve it of any liability for the Plaintiff's claims of false imprisonment, false arrest, defamation, assault, and negligence. The Court, however, disagrees. The Plaintiff alleges that Iberia's employees were negligent in failing to assist her in Istanbul, Turkey when the Turkish authorities arrested her. Furthermore, she alleges that Iberia's employees identified her as an alien on her return flight from Istanbul to Spain. Due to this mistaken identification, shortly thereafter, the Spanish authorities arrested her and allegedly assaulted her. The tariffs do not relieve Iberia of liability for these acts. Therefore, the Court hereby **denies** the Defendant's motion for summary judgment on the Plaintiff's claims based on § 1802 of the Puerto Rico Civil Code.

**IT IS SO ORDERED.**