Doerfer, J.
*409 INTRODUCTION
Plaintiff Gerald Macintosh brought the present action alleging breach of contract, malicious prosecution, libel, and violation of Chapter 93A against Interface Group Massachusetts-Com., Inc. d/b/a GWV International and TAESA Airlines after he was removed from an airplane at Bradley International Airport in Connecticut, arrested, jailed and charged with a breach of the peace. This matter is before the court on the defendants’ motions for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, defendant GWV International’s motion for summary judgment is ALLOWED. Further, defendant TAESA Airlines’ motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed facts as contained in the summary judgment record are as follows. Defendant Interface Group Massachusetts-Com, Inc. dba GWV International (GWV) is a Needham-based charter tour operator which arranges package charter vacations to various destinations. Defendant TAESA Airlines (TAESA) is a company duly organized under the laws of Mexico which provides air transportation. On March 7, 1995, plaintiff Gerald Macintosh (Macintosh) contracted with GWV for a vacation travel package to the island of St. Maarten. GWV organized the tour package, issued passenger tickets to the participants, made reservations with the hotels in St. Maarten and arranged both the land and air transportation for the trip.
TAESA contracted with GWV to provide the round trip air transportation between Boston and St. Maarten. GWV sent Macintosh ticket # 546132 for flight 1427 from Boston to St. Maarten on March 25, 1995 and return flight 1428 from St. Maarten to Boston on April 1, 1995. The ticket identified TAESA as the airline carrier.
Following an otherwise uneventful vacation, on April 1, 1995, Macintosh and friend Tracie Taylor boarded TAESA’s aircraft in St. Maarten to return to Boston. Flight 1428 was a nonsmoking flight. Macintosh was seated in row 23 of the cabin, the second to last row, and there were two lavatories at the back of the aircraft. The plane made a scheduled intermediate stopover at Bradley International Airport in Hartford, Connecticut. Passengers who were continuing on to Boston were asked to remain on board the aircraft due to the short turnaround time and were reminded that there would be no smoking during the intermediate stop. After the aircraft arrived at the gate, Macintosh told flight attendant Guillermo Blanco Aguilar (Aguilar) that he wished to leave the plane to smoke a cigarette in the terminal. Aguilar told him that he could not do so because there was not enough time.
Macintosh then entered the rest room in the rear of the plane with a pack of cigarettes in the pocket of his shirt. After remaining inside for two or three minutes, Macintosh exited the rest room, and another passenger then entered. Less than one minute after Macintosh had returned to his seat two rows away, the smoke alarm sounded in the rest room. Flight Attendant Aguilar reported to Purser Albert Emil Vavrina Leon (Leon) that the smoke alarm had sounded in the rear cabin and pointed out Macintosh as the person he believed had smoked in the rest room. Leon informed Macintosh that it was a federal offense to smoke in the lavatory of an aircraft and told him to come forward to speak to the captain. However, Macintosh refused to leave his seat.[3] Leon went to the flight deck and reported to Captain Norberto Garcia Castillo that a passenger had been smoking in the lavatory and that the passenger was rude and abusive to the cabin crew. Captain Castillo radioed TAESA’s ground handling company at Bradley and requested that security personnel come to the aircraft. Shortly thereafter, several uniformed Connecticut State Police officers arrived at the plane and inquired as to the identity of the troublesome passenger, whereupon Leon directed them to Macintosh. The officers escorted Macintosh off of the aircraft and took him into the terminal.
Macintosh told the officers that he had done nothing wrong, he had paid to fly all the way to Boston, there were only twenty-minutes remaining in the flight, and he wanted to return to his seat. When Macintosh demanded to speak to the captain, the officers told him that the captain did not have to explain his actions or do anything he didn’t want to. Macintosh then stated that he was reboarding the plane and attempted to walk toward the door leading to the aircraft, at which point the officers handcuffed him and informed him that he was under arrest.
One of the officers returned to the plane several minutes later and asked Leon whether Macintosh could continue on the flight to Boston because he had no money to remain overnight in Hartford. However, Captain Castillo refused to allow Macintosh to reboard the aircraft and continue to Boston. Two police officers then escorted Macintosh, in handcuffs, back on the plane to retrieve his personal belongings.[4] Macintosh was taken to the State Police barracks where he received the Miranda warnings and was charged with breaching the peace and violating Federal Aviation Administration Regulation 49 U.S.C. 1472J, interfering with flight crew members and flight attendants. According to the police report, Macintosh “used obscene language and was loud enough to be heard by other passengers on the aircraft. The accused appeared to be intoxicated at this time.” Between the time the flight left St. Maarten and the time it landed in Hartford, Macintosh had consumed two or three small bottles of scotch on the plane.
Macintosh called his parents and asked them to contact his attorney, after which he was fingerprinted *410 and booked. Bail was set at $500, but Macintosh was unable to find a bail b ondsmen. At approximately 2:00 a.m., Taylor and another friend arrived with $380 in cash and convinced the police to release him on that amount. Macintosh returned to Connecticut the following Monday for his arraignment and hired a local criminal lawyer. The District Attorney dismissed all charges against Macintosh after no one appeared to testify that he breached the peace.
Thereafter, on June 21, 1996, Macintosh filed the present action against GWV and TAESA alleging breach of contract in Count I, malicious prosecution in Count II, unfair and deceptive practices in violation of Chapter 93A in Count III, and libel in Count IV. Both defendants now move for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat'l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
I. GWV’s MOTION FOR SUMMARY JUDGMENT
GWV moves for summary judgment on the ground that it breached no contractual obligation to Macintosh and is not responsible for the actions of TAESA. Macintosh contends that GWV contracted to provide him with air transportation on flight 1428 from St. Maarten to Boston on April 1, 1995 and breached that contractual obligation when he was removed from flight 1428 at Bradley Airport in Connecticut. There is no evidence before this Court of any charter tour contract between Macintosh and GWV, although Macintosh has produced copies of charter ticket #546132 issued by GWV for flight #1428, on April 1, 1995, from SXM Airport in St. Maarten to Logan International on carrier TAESA AIR.
Taking the facts in the light most favorable to the nonmoving party, Macintosh has simply failed to produce evidence demonstrating a genuine issue of material fact with respect to GWV’s contractual liability. On the present summary judgment record, GWV agreed to arrange round trip air transportation for Macintosh between Boston and Sr. Maarten on certain dates, and it is undisputed that it fulfilled that obligation by providing him with the plane tickets. Macintosh has not introduced any evidence of an agreement by GWV to accept responsibility for subsequent events affecting the completion of the trip as scheduled. Accordingly, he has no reasonable expectation of establishing at trial that his removal from the plane by TAESA crew members constituted a breach of GWV’s charter tour contract. Compare Accomando v. Trans National Travel, Civil Action No. 90-6605 (Suffolk Super. Ct. June 19, 1991) (Tuttle, J.) (concluding that charter tour operator did not breach its contract to vacationer where tour participant contract contained disclaimer that charter operator was not responsible for negligence of any service provider during trip, including plane services; tour operator performed its duties by arranging and providing services offered in tour package; and tour operator was not responsible for the 36 hour delay in flight). Thus, GWV is entitled to judgment as a matter of law on Count I of the complaint.
GWV further moves for summary judgment on the remaining counts for malicious prosecution, libel and violation of Chapter 93A on the ground that, as a matter of law, it is not vicariously liable for TAESA’s actions in accusing Macintosh of smoking in the rest room of the plane and summoning the Connecticut Police who then arrested and charged him with breach of the peace. It is undisputed that no officer, agent or employee of GWV was present on the TAESA flights Macintosh took between Boston and St. Maarten, and there is no evidence in the record that any officer, agent or employee of GWV was in any way directly involved in having Macintosh removed from the plane during the Connecticut stopover. Thus, GWV could only be liable for Macintosh’s removal from the plane and subsequent arrest and incarceration upon proof of an agency relationship between itself and TAESA.
The relationship of principal and agent arises from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent of the other so to act. Harrison Conference Services of Mass, Inc. v. Commissioner of Revenue, 394 Mass. 21, 24 (1985). The primary test of the relationship of principal and agent is the right to control. Cowan v. Eastern Racing Assoc., Inc., 330 Mass. 135, 141 (1953). According to the uncontradicted affidavit of Bruce Wilson, the Manager of Client & Agency Services for GWV, GWV is in no way involved in the ownership, operation or control of TAESA Airlines. Moreover, the Aircraft Charter Agreement between GWV and TAESA with respect to the St. Maarten trip provides in relevant part:
Charter Operator shall observe all operating rules and regulations of TAESA and comply with all reasonable instructions of TAESA agents and employees. The Captain of the aircraft shall have complete discretion concerning preparation of the aircraft for flight and concerning the flight of the *411 aircraft . . . and, all other matters relating to the operation of the aircraft, and the Charter Operator shall accept all decisions as final.
The Charter Agreement further states: “Charter operator arranges and sells charter flights provided hereunder as an independent contractor and not as agent for TAESA.” Thus, the contract between the parties demonstrates the absence of an agency relationship between TAESA and GWV and more specifically, GWV s inability to control TAESA’s conduct with respect to the operation of the flights between Boston and St. Maarten. See Accomando v. Trans National Travel, Civil Action No. 90-6605 (Suffolk Super. Ct. June 19, 1991) (Tuttle, J.) (concluding that charter tour operator was not vicariously liable for negligence, false imprisonment or intentional infliction of emotional distress of airline carrier where tour operator’s only involvement in flight was to arrange air service). Compare Harrison Conference Services of Mass, Inc. v. Commissioner of Revenue, supra at 22 (upholding a finding of agency between two companies where the contract between them demonstrated that one’s duties were subject to the other’s approval and control).
The existence of an agency relationship is a question of fact for the jury only if there is evidence of an appointment by the principal and a delegation to the agent of duties to be performed, or if the conduct of the parties is such that an inference is warranted that one was acting on behalf of and with the knowledge and consent of another. Stern v. Lieberman, 307 Mass. 77, 81 (1940); Cowan v. Eastern Racing Asoc., Inc., supra at 143. Compare Doherty v. Hellman, 406 Mass. 330, 335 (1989); Chase v. Independent Practice Assoc., Inc., 31 Mass.App.Ct. 661, 667 (1991) (concludingthat summary judgment was appropriate where the record contained no facts suggesting' that medical center director or HMO supervised or controlled the individual doctor who negligently treated the plaintiff). In the present case, Macintosh has failed to produce any evidence which would create a genuine issue of material fact concerning an agency relationship between GWV and TAESA.
Macintosh further contends that TAESA had apparent authority to act on behalf of GWV, asserting that “when Mr. Macintosh boarded the TAESA aircraft in Boston and St. Maarten it was reasonable for him to believe that TAESA was acting on behalf of GWV.” However, apparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person has authority to act as its agent. Hudson v. Massachusetts Property Ins. Underwriting Association, 386 Mass. 450, 457 (1982); Karsallis Finance Ltd. v. Fern, 421 Mass. 659, 665 (1996). Macintosh has failed to produce any evidence of specific conduct by GWV which would cause parties such as himself to reasonably believe that TAESA was its agent and to rely on such a belief. Accordingly, he has no reasonable expectation of demonstrating at trial that GWV is vicariously liable for TAESA’s allegedly tortious conduct, and GWV is entitled to judgment as a matter of law on Counts II, III and IV of the complaint.
II. TAESA’S MOTION FOR SUMMARY JUDGMENT
TAESA moves for summary judgment on the ground that all of Macintosh’s claims are barred under federal law and further, that Macintosh has no reasonable expectation of establishing the substantive elements of such claims.
A. FEDERAL DEFENSES
TAESA first moves for summary judgment on the ground that it was authorized to remove Macintosh from the plane pursuant to the terms of its tariff and Section 44902 of the Federal Aviation Act.
1. Tariff Provisions
Tariffs properly filed are conclusive and exclusive of the rights and liabilities between an airline and its passengers. United States v. Edwards, 602 F.2d 458, 463 (1st Cir. 1979). The provisions of an airline’s tariff are binding on a passenger, even if the passenger did not actually know of them. Fontan-de-Maldonado v. Lineas Aereas Costarricenses, 936 F.2d 630, 631 (1st Cir. 1991). TAESA’s airline tariff, on file with the Department of Transportation and effective April 1, 1995, provides in relevant part:
Carrier will refuse to cariy, cancel the reserved space of, or remove en route any passenger:
(a) When such action is necessary for reasons of safety;
(c) When the conduct, age, mental or physical condition of the passenger is such:
(i) In the reasonable judgment of a responsible carrier employee, the passenger is apparently under the influence of intoxicating liquors or drugs (except a medical patient under proper care); or
(ii) In the reasonable judgment of a responsible carrier employee, there is a possibility that the passenger would cause disruption or serious impairment to the physical comfort or safety of other passengers or carrier’s employees, interfere with a crew member in the performance of his duties or jeopardize safe and adequate flight conditions.
This contractual provision, which is binding on Macintosh, grants discretion to TAESA with respect to the carriage of passengers. Even assuming that the tariff is subject to an implied requirement that TAESA’s discretion be exercised in good faith, given Macintosh’s belligerence toward the crew as they tried to resolve their suspicion that he had smoked in the plane’s rest room, there is nothing in the present summary judgment record suggesting that Captain *412 Castillo acted in bad faith in removing Macintosh from the plane. Accordingly, this Court concludes that TAESA’s tariff bars Count I of the complaint alleging breach of contract.
Nonetheless, the tariff provision does not necessarily bar Macintosh’s tort claims for malicious prosecution, unfair and deceptive practices and libel, which constitute alleged wrongs separate from TAESA’s refusal to transport Macintosh to Boston. See. e.g., Diaz Aguasviva v. Iberia Lineas Aereas de Espana, 902 F.Supp. 314, 319 (D. Puerto Rico 1995) (concluding that tariff provision which barred a passenger’s breach of contract claim did not relieve the airline of liability for false arrest, defamation, assault and negligence).
2. FAA Provision
However, TAESA further moves for summary judgment on all counts on the ground that it was justified in removing Macintosh from the aircraft under the provisions of the Federal Aviation Act.[5] Title 49 Section 44902 of the United States Code provides in relevant part:
Subject to regulations of the Administrator, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety. 49 U.S.C. §44902(b) (1994).
A refusal to transport a passenger under this provision is proper when made in the face of evidence which would cause a reasonably careful and prudent air carrier to form the opinion that the passenger’s presence aboard a plane “would or might be mimical to safety of flight.” Williams v. Trans World Airlines, 509 F.2d 942, 948 (2d Cir. 1975).
Congress was certainly aware that decisions under [this provision] would in many instances probably have to be made within minutes of the plane’s scheduled take-off time, and that the carrier’s formulation of opinion would have to rest on something less than absolute certainly. The statute did not contemplate that the flight would have to be held up or cancelled until certainty was achieved. The test of whether or not the airline properly exercised its power under [this provision] to refuse passage to an applicant or ticket-holder rests upon the facts and circumstances of the case as known to the airline at the time it formed its opinion and made its decision and whether or not the opinion and decision were rational and reasonable and not capricious or arbitrary in the light of those facts and circumstances. They are not be tested by other facts later disclosed by hindsight.
Williams v. Trans World Airlines, supra at 948; Cordero v. CIA Mexicana de Aviacion, S.A., 681 F.2d 669, 671 (9th Cir. 1982).
In the present case, TAESA contends that its decision to remove Macintosh from the plane as inimical to the safety of the flight was reasonable as a matter of law because Macintosh was verbally abusive to the staff and appeared to be intoxicated. In the context of 49 U.S.C. §44902(b), an airline is given broad discretion to decide whether or not to refuse passage to a ticket-holder, and Macintosh can prevail on his claims that TAESA’s refusal to do so was actionable only if he can demonstrate that under the circumstances known to the airline at the time, its decision was unreasonable, irrational, arbitrary or capricious. In several cases, courts have concluded that the propriety of an airline’s conduct under this standard was a matter of law, such as would be appropriate for determination upon summary judgment.
For example, in Williams v. Trans World Airlines, the court concluded that it was reasonable as a matter of law to refuse to transport a passenger in reliance on FBI information that there was an outstanding warrant for the passenger’s arrest; the passenger was a fugitive from justice; was schizophrenic, possessed weapons and had advocated violence in the past; and there could be a disruptive demonstration upon the passenger’s arrival at his destination. 509 F.2d at 946-948. The Court thus entered judgment in favor of the airline on the passenger’s claims for breach of contract and false imprisonment. Id. at 949.
Similarly, in Sedigh v. Delta Airlines, Inc., the court granted summary judgment in favor of the defendant airline on a passenger’s breach of contract, assault, slander and intentional infliction of emotional distress claims after concluding that it was reasonable as a matter of law to remove the passenger from the plane during a stopover in Germany, where he appeared extremely nervous and was sweating profusely; he smoked in the rest room setting off the fire alarm; and he muttered about Germany having “killed all the Jews” and repeatedly stated, “kill all the Jews” and that he would “get them.” 850 F.Supp. 197, 201 (E.D.N.Y. 1994). Finally, in Adamsons v. Ameñcan Airlines, Inc., the court concluded that it was reasonable as a matter of law for an airline to refuse to transport a paralyzed passenger in a wheelchair with a catheter and Foley disposal bag, traveling alone, who was in obvious pain, and suffered from an undiagnosed illness which might have been infectious. 444 N.E.2d 21, 25 (N.Y.), cert. den., 463 U.S. 1209 (1982).
In contrast, in Cordero v. CIA Mexicana de Aviación, S.A., it was a question for the juiy whether a carrier’s refusal to transport a passenger whom it believed had uttered obscenities at the captain and crew was unreasonable, where the passenger claimed it was a case of mistaken identity and the airline failed to make even a cursory inquiry into whether the passenger had in fact committed the disruptive act. 681 F.2d at 672. In the present case, although it remains disputed whether or not Macintosh indeed smoked in the rest room of the plane, the crew witnessed firsthand his disruptive behavior in refusing to comply with the *413 captain’s request to see him and uttering obscenities at the crew.
Admittedly, the facts of this case do not present as obvious a threat to flight safety as do those in the Williams and Sedigh cases. Nonetheless, although 49 U.S.C. §44902 was primarily designed to prevent terrorism, its use has been expanded to include the removal of disruptive passengers. See e.g., O’Carroll v. American Airlines, Inc., 863 F.2d 11, 11-12 (5th Cir.), cert. den., 480 U.S. 1106 (1989) (pursuant to FAA, captain ordered the removal of a passenger who was loud and intoxicated, uttered obscenities, and refused to leave the plane when an irregularity with his ticket was discovered; common law claims deemed preempted by FAA); Cordero v. CIA Mexicana de Aviacion, supra at 670 (captain refused to allow a disruptive passenger who had loudly insulted crew to reboard the plane after a stopover); Von Anhalt v. Delta Air Lines, Inc., 735 F.Supp. 1030, (S.D. Fla. 1990) (captain ejected a passenger who refused to allow the flight attendant to stow away her carry-on baggage; common law claims found to be preempted by FAA).
Given Macintosh’s undisputed refusal to accede to the request of the crew that he speak to the captain and his admitted use of foul language toward the crew and extreme upset at being accused of smoking, he has no reasonable expectation of demonstrating at trial that TAESA’s refusal to transport him to Boston was irrational or arbitrary. Accordingly, this Court concludes that TAESA is entitled to judgment as a matter of law on all counts of the complaint.[6]
B. SUBSTANTIVE GROUNDS
Finally, in the alternative, TAESA contends that it is entitled to summary judgment on Counts II, III and IV of the complaint on the ground that Macintosh has no reasonable expectation of establishing the substantive elements of those claims.
1. Choice of Law
The present case concerns an incident which occurred in the state of Connecticut involving a domiciliary of Massachusetts, Macintosh, and a Mexican corporation, TAESA. Thus, as a threshold matter, this Court must determine which state’s substantive law will apply. As the forum state, Massachusetts applies its own choice of law rules. New England Telephone & Telegraph Co. v. Gourdeau Construction Co., Inc., 419 Mass. 658, 660 (1995). In tort actions, Massachusetts courts apply the law of the state where the injury occurred unless another state has a more significant relationship to the parties and the occurrences in the case. Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 647 (1994). All of Macintosh’s tort claims arise out of a series of events occurring in Connecticut: his removal from the plane, arrest and prosecution for breach of the peace. With respect to malicious prosecution, the alleged injury of incarceration, posting bail, and defending against allegedly baseless criminal charges all occurred in Connecticut. Similarly, with respect to the libel claim, the allegedly false statements were made in Connecticut, and any harm to Macintosh’s reputation presumably occurred there. Accordingly, this Court concludes that the substantive law of Connecticut applies to Macintosh’s tort claims against TAESA.
2. Malicious Prosecution
Count II of Macintosh’s complaint states, “At the time the Defendants alleged to the Connecticut State Police that the Plaintiff had been smoking in the rest room, the Defendants knew or reasonably should have known that there was no probable cause to believe that the Plaintiff had been smoking in the rest room. At the time the Defendants caused the Plaintiff to be removed from the aircraft and arrested, the Defendants did not intend to provide any evidence during the criminal prosecution of the Plaintiff.” To prevail in an action for malicious prosecution, a plaintiff must prove that the defendant initiated or procured the institution of criminal proceedings against him, those proceedings terminated in the plaintiffs favor, the defendant acted without probable cause, and the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. Zenik v. O’Brien, 79 A.2d 769, 771 (Conn. 1951); McHale v. W.B.S. Corporation, 446 A.2d 815, 817 (Conn. 1982).
One cannot be found to have instituted a criminal proceeding against another if he has merely given potentially incriminating information to police, in good faith, and has left the decision to arrest and prosecute entirely to the discretion of the public officer. Zenik v. O’Brien, supra at 771; McHale v. W.B.S. Corporation, supra at 817-818.[7] However, a person will be deemed to have instituted a proceeding if his direction or request, or pressure of any kind by him, was the determining factor in the officer’s decision to commence the prosecution. Id. There is simply no evidence in the present summary judgment record to suggest that TAESA demanded or directed that the Connecticut State Police arrest Macintosh for breach of the peace. Captain Castillo did radio police for assistance in removing Macintosh from the plane. However, Macintosh was not arrested and charged with breach of the peace until, in the terminal, he attempted to reboard the plane in direct disregard of police orders. Finally, to the extent that Macintosh was arrested and charged because of the alleged smoking incident on the plane and his use of obscene language to the crew, he has failed to produce any evidence that TAESA furnished police with false information to influence their actions, or that the police did not exercise their independent discretion in arresting and charging him. Accordingly, Macintosh has no reasonable expectation of prevailing at trial on his claim for malicious prosecution, and TAESA is entitled to judgment as a matter of law on Count II of the complaint.
*414 3. Chapter 93A
TAESA further moves for summary judgment on Count III of the complaint on the ground that its removal of Macintosh from the plane is a transaction which is not actionable under G.L.c. 93A. Chapter 93A, Section 3 provides:
Nothing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States. For the purpose of this section, the burden of proving exemptions from the provisions of this chapter shall be upon the person claiming the exemptions. G.L.c. 93A, §3 (1994).
To meet its burden under this section, a defendant must show more than just the mere existence of a related or even overlapping regulatory scheme that covers the transaction. Rather, the defendant must show that such scheme affirmatively permits the practice which is alleged to be unfair or deceptive. Commonwealth v. DeCotis, 366 Mass. 234, 240 (1974); York v. Sullivan, 369 Mass. 157, 161 (1975); Bierig v. Everett Square Plaza Associates, 34 Mass.App.Ct. 354, 367 n. 14, rev. den., 415 Mass. 1105 (1993).
As discussed above, under the circumstances of this case, TAESA was authorized to remove Macintosh from the plane pursuant to 49 U.S.C. §44902(b). Accordingly, TAESA has met its burden of demonstrating that its conduct is exempt from liability pursuant to Section 3 of Chapter 93A. See Bierig v. Everett Square Plaza Associates, supra at 368 (concluding that a landlord could not be liable under c. 93A where BHA regulations permitted him to charge the allegedly unfair rent levels). Compare Commonwealth v. DeCotis, supra at 240 (concluding that 93A claims against mobile home owner were not barred by §3 where although the Peabody Board of Health regulated mobile homes, it did not explicitly permit imposition of a fee on the resale of such homes); DePasquale v. Ogden Suffolk Downs, Inc., 29 Mass.App.Ct. 658, 663, rev. den., 415 Mass. 1105 (1990) (concluding that 93A claims against a racetrack were not barred by §3 where G.L.c. 128A, regulating horse racing, neither addressed nor permitted the specific conduct alleged to be unfair).
Further, to the extent that Macintosh’s claim for unfair and deceptive conduct is premised on malicious prosecution or libel, the failure of those claims on the substantive merits defeats the Chapter 93A claim as well.
4. Libel
Finally, Count IV of Macintosh’s complaint alleges that “The accusations by the Defendants that the Plaintiff committed a crime were libelous per se under the laws of the State of Connecticut. Although the Defendants had a qualified privilege to allege that the Plaintiff committed a crime in the context of the Defendants’ exercise of their public and private rights, the Defendants’ allegations were uttered for an improper and/or unjustifiable purpose.” To prevail on his claim of defamation, Macintosh must show that TAESA made a false and defamatory statement, the statement identifies the plaintiff to a reasonable reader, TAESA published the statement to a third person, and he suffered injury as a result. Lizotte v. Welker, 709 A.2d 50, 54 (Conn. 1998).
However, TAESA alleges that it was privileged to make the allegedly defamatory statements at issue. To establish a defense of privilege, TAESA must demonstrate that the statements were made in good faith in the bona fide discharge of a public or private duly. Miles v. Perry, 529 A.2d 199, 205-06 n. 8 (Conn.App. 1987). Moreover, all citizens have a conditional privilege to communicate to a police officer information concerning an alleged crime. Moriarty v. Lippe, 294 A.2d 326, 387 n.2 (Conn. 1972).[8] The existence of a conditional privilege is a matter of law to be determined by the court. Id. As airline carriers, Captain Castillo and the TAESA crew were obligated to act for the safely and comfort of all the passengers aboard the flight. See e.g., 49 U.S.C. §41702 (providing that airline carriers must provide safe and adequate interstate air transportation). In addition, they were entitled to report to the State Police conduct which they believed to be a possible crime. The undisputed evidence in the summary judgment record thus reveals that TAESA was conditionally privileged to publish the allegedly defamatory statements concerning Macintosh’s smoking in the rest room to the police. Nonetheless, this conditional privilege may be lost upon a showing by the plaintiff that the defendant abused its privilege by publishing the statements with malice, improper motive or bad faith. Miles v. Perry, supra at 207-08.[9]
Whether the defendant has abused a conditional privilege is ordinarily a question of fact for the jury. Id. at 206, n. 8. However, where the plaintiff fails to introduce evidence sufficient to raise a jury question on the issue of malice, summary judgment on the ground of conditional privilege is appropriate. Lapadula v. Von Mahland, 1993 WL 328625 (Conn. Super.). Accord Dexter's Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 223 (1987) (granting summary judgment on defamation claim where the defendant demonstrated a conditional privilege to publish the material at issue and the summary judgment record contained no facts from which some ulterior motive could be inferred). In the present case, Macintosh has failed to introduce any facts to support the allegation in his complaint that TAESA abused its conditional privilege in speaking to the Connecticut State Police. The record contains no evidence that in alleging to police that Macintosh was smoking in the rest room, Captain Castillo and the TAESA crew knew or should have known that Macintosh had not committed the act alleged, or that they acted in bad faith, for an improper motive, or for any reason other than *415 to protect the interests of the airline and its passengers. Accordingly, Macintosh has no reasonable expectation of prevailing on his claim for defamation, entitling TAESA to judgment as a matter of law on Count IV of the complaint.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Interface Group Massachusetts-Com, Inc. dba GWV International’s motion for summary judgment be ALLOWED. It is further ORDERED that defendant Taesa Airline’s motion for summary judgment be ALLOWED.

Macintosh’s comments at this point are a matter of dispute. According to Leon and Aguilar, Macintosh said that TAESA was a “bullshit Mexican company” and “fuck you and your captain.” Macintosh claims that he said, “I’m not leaving my seat, if the Captain wants to see me he can come here. This is the United States, you know, and I have my rights.” Macintosh admits in his deposition, however, that at some point during the incident on the plane he did use some foul language because he was very, very upset.

According to Leon and Aguilar, as Macintosh exited the plane, he yelled in the direction of the Captain, “You know, you’re a fucking asshole.”

 TAESA does not appear to argue that Macintosh’s claims axe barred by the FAA’s preemption clause, 49U.S.C. §41713. The majority of courts have found no preemption for the types of claims at issue in this case. See e.g., American Airlines, Inc. v. Wolens, 130 L.Ed.2d 715, 728 (1995) (breach of contract claim against airline not preempted); Chukwu v. Board of Directors Varig Airline, 880 F. Supp. 891, 895 (D.Mass. 1995) (breach of contract claim for failure to transport not preempted); Sedigh v. Delta Airlines Inc., 850 F. Supp. 197, 200-01 (E.D.N.Y. 1994) (assault, slander and breach of contract claims not preempted); Diaz Aguasvista v. Iberia Lineas Aereas de Espana 902 F.Supp. 314, 318-19 (D. Puerto Rico 1995) (false imprisonment, defamation and negligence claims not preempted).
But see O’Carroll v. American Airlines, Inc., 863 F.2d 11, 12-13 (5th Cir. 1989) (concluding that FAA preempted common law claim for refusal to transport intoxicated passenger); Von Anhalt v. Delta Airlines, Inc., 735 F.Supp. 1030, 1031 (S.D. Fla. 1990) (concluding that FAA preempted negligence, defamation, and assault and battery claims arising out of airline’s refusal to transport passenger); Stone v. Continental Airlines, Inc., 905 F.Supp. 823, 825-26 (D. Hawaii 1995) (assault and battery and contract claims preempted).

 TAESA also raises as a defense Article VI of the 1963 Tokyo Convention which provides in relevant part that “The aircraft commander may, when he has reasonable grounds to believe that a person has committed, or is about to commit, on board the aircraft, an [offence against penal law or act which may jeopardize the safely of the aircraft or of persons or property therein or which jeopardizes good order and discipline on board], impose upon such person reasonable measures including restraint."
However, pursuant to Article 1(2), the Convention applies to offenses or acts occurring while an aircraft is on the surface of the high seas or in flight, which is defined as “any time from the moment when all [the aircraft’s] external doors are closed following embarkation until the moment when any such door is opened for disembarkation.” Thus, it does not appear that Article VI applies to the events which transpired in the present case.

The rule is the same under Massachusetts law. See Ziemba v. Fo’cs’le, Inc., 19 Mass.App.Ct. 484, 489, rev. den., 394 Mass. 1104 (1985); Conway v. Smerling, 37 Mass.App.Ct. 1, 4 (1994) (stating that for sound reasons of public policy, if a citizen, believing a crime has been committed, calls police for aid and leaves the matter to the judgment and responsibility of the police, that citizen, though having started the chain of events that led to legal process, cannot be charged with malicious prosecution).

Similarly, under Massachusetts law, there is a conditional privilege to publish defamatory material when reasonably necessary for the protection or furtherance of a legitimate business interest, and a conditional privilege to disclose defamatory information concerning the commission of a crime. See Hutchinson v. New England Tel & Tel Co., 350 Mass. 188, 191 (1966); Foley v. Polaroid Corp., 400 Mass. 82, 95 (1987).

Under Massachusetts law, in order to overcome this privilege, the plaintiff must prove that the defendant published the defamatory information recklessly, with knowledge of their falsity, or with malice for some ulterior motive. Foley v. Polaroid Corp., supra at 95.